[No. S133464. June 22, 2006.]

MICHAELIS, MONTANARI & JOHNSON, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
CITY OF LOS ANGELES DEPARTMENT OF AIRPORTS et al., Real
Parties in Interest.

COUNSEL

Michaelis, Montanari & Johnson, Garry L. Montanari and Nathan B. Rand for Petitioner.

DLA Piper Rudnick Gray Cary US, James M. Chadwick, Jarod M. Bona; Thomas W. Newton, James W. Ewert; Harold W. Fuson, Jr.; Karlene Goller; Andrew Huntington; Thomas R. Burke; and Jonathan Donnellan for the California Newspaper Publishers Association, The Copley Press, Inc., Los Angeles Times, San Jose Mercury News, Inc., The Bakersfield Californian and The Hearst Corporation as Amici Curiae on behalf of Petitioner.

Davis, Cowell & Bowe and Andrew J. Khan for Retail Food Industry Joint Labor Management Committee as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Rockard J. Delgadillo, City Attorney, Eduardo A. Angeles, Assistant City Attorney, M. Lynn Mayo, Deputy City Attorney; Meyers, Nave, Riback, Silver & Wilson, Mara E. Rosales, Joseph M. Quinn and Julia L. Bond for Real Parties in Interest.

Dennis J. Herrera, City Attorney (San Francisco), Buck Delventhal and Paul Zarefsky, Deputy City Attorneys; David L. Alexander, Port Attorney, and Christopher H. Alonzi, Deputy Port Attorney, for City and County of San Francisco, League of California Cities, California State Association of Counties and City of Oakland, acting by and through its Board of Port Commissioners, as Amici Curiae on behalf of Real Parties in Interst.

OPINION

CHIN, J.—In this case, we consider California's Public Records Act (Gov. Code, § 6250 et seq. (the Act)), generally calling for disclosure of a public agency's records, and the statutory exception (*id.*, § 6255) applicable where the public interest in nondisclosure "clearly outweighs" the public interest in disclosure. More specifically, we face questions concerning the availability and timing of public disclosure of competitive proposals submitted to a public agency as part of a process of qualifying and negotiating for a public contract, lease, or other project. As will appear, consistent with analogous

federal law and the majority of statutes and decisions in other states, we conclude that public disclosure of such proposals properly may await conclusion of the agency's negotiation process, occurring before the agency's recommendation is finally approved by the awarding authority. We will reverse the contrary judgment of the Court of Appeal.

*FACTS*

The following uncontradicted facts are taken largely from the Court of Appeal's decision. On November 3, 2003, the City of Los Angeles Department of Airports, also known as Los Angeles World Airports (LAWA), issued a "Request for Proposals" (RFP) for the lease of a 7.2854-acre parcel of land at Van Nuys Airport. Situated on the parcel is a complex consisting of three hangars, two office buildings, and a fuel farm. "Proposers" were told to submit proposals by December 15, 2003, although the date was later extended to February 15, 2004. The RFP provided that all proposals "will become the property of LAWA and a matter of public record."

Under the RFP, LAWA would select the successful proposal based on a number of criteria or qualifications, including the proposed rent and concession fees, the proposed use of the property, financial capability and responsibility, management qualifications and experience, general reputation to conduct aeronautical services, scope of aviation services to be provided and "other such factors as LAWA deems appropriate." The RFP also provided that LAWA could reject any or all proposals, could advertise for new proposals, or could "proceed otherwise." Additionally, LAWA could elect to negotiate with the "Proposer(s) found . . . to have submitted the best Proposals . . . ." Following negotiations, LAWA would submit a proposed lease to the reviewing authority, the Board of Airport Commissioners (the Board) and, following the Board's approval of a proposed lease exceeding five years, to the Los Angeles City Council. Prior to the Board's approval, the public would have five days to review these proposals and the proposed lease. LAWA received eight proposals in response to its RFP.

On April 19, 2004, after the deadline for submitting proposals had passed, but before LAWA had negotiated with or selected the successful proposer, petitioner, a law firm engaged in aviation-related business, submitted to the Airport Division of the Los Angeles City Attorney (City Attorney) a request under the Act for copies of all proposals submitted in response to the RFP. On May 7, 2004, LAWA's Airport Property Manager, Jess Romo, informed petitioner that LAWA would provide it with copies of the proposals *after* LAWA had concluded negotiations with the (yet to be named) successful proposer.

Mr. Romo's letter noted the "long-established practice of most governmental agencies to make RFP proposals available for public review at the time the contract is presented to the awarding authority [i.e., the Board] for award. More precisely, proposals are first available for review when the awarding authority's agenda containing the contract to be awarded is published. [¶] This practice allows for the public to obtain the information prior to the awarding authority's consideration and award of the contract. Importantly, it also allows the governmental entity, on behalf of its residents and taxpayers, to complete the negotiations without the proposers knowing each other's price and terms. To make proposals available for public review prior to this time would seriously impact the government's ability to negotiate a fair and cost effective proposed contract."

On May 12, 2004, petitioner filed a mandate petition in superior court. (See Gov. Code, § 6258.) A hearing was set for September 13, 2004. In the meantime, on June 8, 2004, after the deadline for submitting proposals had passed, the City Attorney provided petitioner with the *names* of the companies that had submitted proposals, but did not provide copies of the proposals themselves. The City Attorney opined that disclosing the information at that time "would irretrievably corrupt the process and harm not only the respondents, but also city taxpayers who may not receive the best value in return for the expenditure of their tax dollar," because the successful proposer could gain a negotiating advantage if it knew the details of the unsuccessful proposals.

The City Attorney referred petitioner to section 10.15(f)(6) of the Los Angeles Administrative Code, which relates to competitive bidding. That section provides: "Proposals shall be opened and their contents secured to prevent disclosure during the process of negotiating with competing proposers. The proposals shall be opened publicly, but only the names of the proposers shall be revealed. Adequate precautions shall be taken to treat each proposer fairly and to insure that information gleaned from competing proposals is not disclosed to other proposers. Prices and other information concerning the proposals shall not be disclosed until a recommendation for award is made to the awarding authority."

On June 30, 2004, LAWA mailed letters to all the bidders announcing that its evaluation panel was recommending Castle & Cooke Aviation Services as the best-qualified firm for the project. LAWA told the unsuccessful proposers that if they wanted to "provide additional information" they could do so by

"completing a public comment card." Under the provisions of the RFP, if any person wanted to submit a protest concerning the award it was required to do so "by 5:00 p.m. of the fifth business day after the issuance of a notice of intent to award the Lease." Any such protest had to contain "a full and complete statement specifying in detail the grounds of the protest and the facts in support thereof."

Although LAWA's request to negotiate with Castle & Cooke Aviation Services was placed on the agenda for the July 19, 2004, meeting of the Board, it declined to approve the award at that time. Rather, the Board deferred its decision and returned the matter to LAWA to "evaluate all scenarios of all proposals for the highest and best return to LAWA prior to presenting an agenda item to the Board." LAWA's staff scheduled meetings with three proposers in mid-September 2004.

On September 13, 2004, the trial court issued its tentative decision to deny petitioner's mandate petition. The court cited Government Code section 6255, and stated its tentative view that disclosing contents of the proposals prior to the ultimate selection of the successful proposer would adversely impact the city's negotiating position. The mandamus petition was heard September 27, 2004. On October 8, 2004, the court issued its decision denying the petition pursuant to Government Code section 6255 "because the public interest in nondisclosure clearly outweighs the public interest in disclosure."

The Court of Appeal, by a two-to-one vote, disagreed with the trial court, finding that "the City has failed to demonstrate there is a 'clear overbalance' in favor of delaying disclosure." The majority felt that the city's reasons for nondisclosure were "vague and speculative," and that the public had a "significant interest" in knowing, *prior to completion of the negotiating process*, whether LAWA had acted properly and in accordance with its own guidelines.

The Court of Appeal majority also reasoned that (1) the city's concern about the possibility of proposers changing their proposals was unfounded because proposers were not permitted to change their proposals after the submission deadline had passed, (2) the city enjoyed an "enormous negotiating advantage" in being able to reject any proposals deemed unsuitable, and (3) the city's negotiating position could not be hurt by permitting proposers to know that other competitive proposals were "waiting in the wings." The majority concluded that the public had a legitimate interest in knowing *during the negotiating process*, whether the city had acted in accordance with its guidelines, or instead had improperly favored certain proposers.

In his dissent, Justice Mosk stated that substantial evidence supported the trial court's findings that little if any public benefit would derive from premature disclosure of the competing proposals, and that such disclosure could impair the city's selection and negotiating process. As will appear, we think the dissent's views have merit and will reverse.

## DISCUSSION

■ The Act, while "mindful of the right of individuals to privacy," provides that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (Gov. Code, § 6250; see also Cal. Const., art. I, § 3, subd. (b) [creating constitutional right of access to public agency records and calling for strict construction of statutes limiting such access]; Gov. Code, § 54950.) Accordingly, as a general rule, public records are open to inspection at all times during office hours, "and every person has a right to inspect any public record, except as hereafter provided." (Gov. Code, § 6253, subd. (a).) In addition to specific exemptions of particular records set forth in Government Code section 6254, the Act contains a broad catchall exemption for agencies able to "justify withholding any record by demonstrating that . . . on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (*Id.*, § 6255, subd. (a).) As petitioner observes, this provision contemplates a case-by-case balancing process, with the burden of proof on the proponent of nondisclosure to demonstrate a clear overbalance on the side of confidentiality. (E.g., *California State University, Fresno Assn., Inc. v. Superior Court* (2001) 90 Cal.App.4th 810, 831 [108 Cal.Rptr.2d 870].)

As noted, the trial court expressly found that in this case the public interest in nondisclosure clearly outweighed the public interest in disclosure. The court's tentative decision, which the court later ordered filed as setting forth the court's "rationale," contained the following additional findings: "[LAWA's] ability to get the most value for the hangar facility would be impacted if the proposer that is ultimately approved by [the Board] enters into lease negotiations with full knowledge of what each proposer is willing to pay. [LAWA's] ability to negotiate with the proposer would be hampered because the proposer's doubt as to what the competition is offering would be eliminated. To the extent the public interest in disclosure is to hold government agencies accountable by verifying their actions, that interest would still be served by disclosing the proposals after [the Board] actually takes action and negotiates a lease with one of the proposers. [¶] Currently all proposals are subject to further review, recalculation and [LAWA] interviews of the proposers. Disclosure of specific details of the proposals would impact [LAWA's] flexibility in negotiation and could be used against the City to gain competitive advantage."

The dissent below explained that although a reviewing court should weigh the competing public interest factors de novo, it should accept as true the trial court's findings of the "facts of the particular case" (Gov. Code, § 6255, subd. (a)), assuming those findings are supported by substantial evidence. (*CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 650–651 [230 Cal. Rptr. 362, 725 P.2d 470]; *Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1336 [283 Cal.Rptr. 893, 813 P.2d 240]; *CBS Broadcasting Inc. v. Superior Court* (2001) 91 Cal.App.4th 892, 906 [110 Cal.Rptr.2d 889]; *California State University, Fresno Assn., Inc. v. Superior Court, supra,* 90 Cal.App.4th at p. 824; see Gov. Code, § 6259.) As will appear, the trial court's findings are supported by substantial evidence and confirm our independent reweighing of the various public interest factors in the city's favor.

Petitioner also argues that, even if the records at issue were exempt from advance disclosure, the city was obliged to disclose them because it failed to comply with the timing requirements of the Act (e.g., Gov. Code, § 6253, subds. (c) [requiring agency decision within 10 days as to whether it will comply with disclosure request], (d) [proscribing delay in disclosure].) But we believe that requiring disclosure of otherwise exempt records as a penalty for delay in complying with the Act's timing requirements is unduly harsh. Certainly, the Act does not expressly provide such a remedy. (Cf. *Rogers v. Superior Court* (1993) 19 Cal.App.4th 469, 483 [23 Cal.Rptr.2d 412].) Accordingly, we will address the merits of the nondisclosure issue.

**1. Public interest in disclosure**—The Court of Appeal majority found a "significant" public interest in advance disclosure of the various proposals after the deadline for submitting them had passed, but before LAWA's negotiations with the preferred proposer had ceased. In the majority's view, the public was entitled to "assur[e] itself that LAWA is following its own guidelines [in] selecting the successful proposer, and is not selecting these individuals or entities based on political favoritism or some other criteria that do not serve the public."

To support the Court of Appeal majority's position, petitioner points to a 2003 city audit report, made public before the LAWA proposals in this case were due, raising concerns about LAWA's general contracting practices, its difficulties in evaluating and selecting contract proposals because the definition and weight given to the various evaluation factors were insufficiently specific, and the "potential of abuse and conflict of interest" inherent

in the RFP process. Petitioner also stresses the "intense public interest" in the airport lease proposals, given the potential benefits to, and burdens on, the "aviation community" as well as the surrounding commercial and residential neighborhood.

█  We agree that the competitive bidding process is intended to assure a healthy degree of competition, to guard against discrimination, favoritism, or extravagance, and to assure the best social, environmental, and economic result for the public. (See, e.g., *Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 314 [96 Cal.Rptr.2d 747, 1 P.3d 63]; *Domar Electric, Inc. v. City of Los Angeles* (1994) 9 Cal.4th 161, 173 [36 Cal.Rptr.2d 521, 885 P.2d 934]; Pub. Contract Code, § 100, subds. (b)–(d).) Accordingly, the public may have a legitimate and substantial interest in scrutinizing the process leading to the selection of the winning proposal. (E.g., *California State University, Fresno Assn., Inc. v. Superior Court, supra,* 90 Cal.App.4th at pp. 833–834.) But, as the trial court specifically found here, petitioner has offered no compelling reason why public scrutiny of this process cannot as effectively take place *after* LAWA's negotiations are completed, but before the Board and the city finally approve the lease. As the city observes, petitioner's concern about the inadequacy of the five-day period for public comment is based on mere speculation and further assumes the Board would arbitrarily reject a reasonable request for additional time to analyze the winning proposal and prepare critical input. Moreover, further opportunity for such analysis and input presumably would be available if and when the matter is submitted to the city council for final approval.

As Justice Mosk's dissenting opinion in this case noted, "[p]ublic scrutiny of the lease process and accountability of the decision makers will be served better after the negotiating process, LAWA's decision, and, perhaps, after the actual decision to award the lease contract by the Board. Those interested in the integrity of the city's decisionmaking practices will be able to make such an evaluation after decisions are actually made." In that regard, we note that the city does not contend that disclosure necessarily should follow the actual Board award, but "at a time that allows an opportunity to review the process." We need not decide in this case the precise point in time appropriate for such disclosure, as long as a reasonable time remains for public input before the Board's final award is made.

Therefore, we agree with the trial court and the Court of Appeal dissent that public disclosure of the various competing proposals after negotiations are complete, and before the Board finally approves the award of the contract,

would give the public and all interested parties ample opportunity to scrutinize and protest the proposed award. No reason appears why disclosure of the various proposals prior to negotiations would provide any significantly greater benefit to the public.

**2. Public interest in nondisclosure**—The trial court found substantial public benefits from delaying disclosure of the various proposals until LAWA had selected a proposal to be submitted to the Board and the city for approval. Essentially, the court ruled that premature disclosure would reveal specific, confidential details of the competing proposals to the other proposers, thereby potentially impairing the city's negotiation and selection processes.

As the Court of Appeal dissent observed, "[t]he request for proposals suggests that LAWA might elect to negotiate with more than one bidder. If the disclosure of bids takes place prior to negotiations with one or more bidders, the City's ability to obtain the most favorable arrangement may be jeopardized once a negotiating bidder becomes aware of the content of competitive bids because that bidder would no longer be in doubt as to its relative bargaining position. For example, a bidder that is negotiating will be in a position to know that it does not have to accede to City requests because of the content of other bids. The request for proposals also contemplates that changes and amendments to bid proposals will take place during negotiations. During negotiations, bidders may adjust their bids—presumably to the detriment of the City—if they have knowledge of other bids."

Additionally, the city observes that advance disclosure of any significant "gap" between the terms offered by the "finalist" proposer and its competitors could induce that proposer to resist the city's requests for even more favorable terms, or lead to an amended proposal that offers less attractive terms. As an amicus curiae herein observes, the willingness of a negotiating party to agree depends in part on its assessment of the other party's alternatives. Consider a hypothetical example raised during oral argument in this case. If the selected finalist for the lease project knew during negotiations that all of the proposals specified a minimum seven-year period for constructing airport improvements, LAWA could enjoy considerably less leverage in attempting to negotiate a shorter construction period.

This possibility could be even more pronounced in "second-round" situations involving negotiations with more than one potential "finalist." Nondisclosure during the negotiation process also tends to reduce the possibility of collusion, price-fixing, or bid-rigging tactics. In other words, as the trial court found, advance disclosure of the various proposals could adversely affect the city's ability to maximize its financial return on the lease.

The city observes that the RFP called for more than a simple high bid for a leasehold, and instead contemplated a complete lease proposal that included a detailed development plan. As the city states in its opening brief, "Proposers are not likely to present their best work in their proposals if they know that their competitors can filch their ideas during negotiations." A proposer might well hesitate to disclose creative, innovative insights or solutions after weighing the threat of misappropriation by competitors. The result could be submission of inferior proposals, to the ultimate detriment of the public interest.

The Court of Appeal majority questioned the city's concern that competitors might unfairly use the disclosed information to restructure their proposals in such a manner as to appear more attractive. The majority stated that "the proposals cannot be changed once the deadline for submitting them has passed. Thus, the proposers could not amend their proposals to tailor them to those of competitors." But as the dissent observed, "[t]he notion that proposals cannot be changed once the deadline for submitting them has passed does not, in practical effect, appear to be accurate. There are negotiations with bidders over the terms of the bids. If changes could not be made, there would be nothing to negotiate. Moreover, the City can reopen the bidding process. The disclosure of bids during the predecision period may affect the information submitted by bidders and the decision maker's deliberations and processes."

We agree with the Court of Appeal dissent. Although the RFP indicates that amendments to proposals "will not be accepted" after the RFP deadline has passed, certainly LAWA could waive or ignore that provision during negotiations. The RFP contemplates possible postsubmission "interview" sessions when invited proposers may "clarify" their proposals. Moreover, the RFP gives LAWA the right to reject all proposals, advertise for new ones, "or to proceed otherwise." Certainly the RFP would allow LAWA to consider amended proposals.

The Court of Appeal dissent discerned an additional policy reason for withholding disclosure during the negotiation process: "The idea that members of the public should have input into the selection of, and negotiation with, potential lessees would add undesirable pressures, political and otherwise, to the process." Again, we agree. Although similar pressures could be exerted when the negotiated proposal is presented to the Board and city for final approval, the public interest seemingly would better be served by allowing LAWA to negotiate the terms of its lease without facing those pressures.

**3. Federal and state authorities**—Federal statutes and cases implementing or interpreting the federal Freedom of Information Act (FOIA) are instructive because the California Act is modeled on the FOIA. (See, e.g., *Times Mirror Co. v. Superior Court, supra,* 53 Cal.3d at p. 1338.) With regard to federal procurement contracts, federal law prohibits disclosure of bid or proposal information prior to the actual award of the contract. (See 41 U.S.C. §§ 253b(f)(4) [debriefing unsuccessful bidders shall not include content, ranking, or evaluation of other proposals], 253b(m) [prohibition on release of contractor proposals unless incorporated in contract with proposer], 423(a) [prohibition on release of contractor bid or proposal information before award]; 5 U.S.C. § 552(b)(3) [exempting from FOIA disclosure any material exempted from disclosure by statute]; 48 C.F.R. § 424.203 (2005) [regulation exempting competitive proposals from FOIA; *Shermco Industries v. Secretary of Air Force* (5th Cir. 1980) 613 F.2d 1314, 1317–1318 [disclosure of bid competitor's cost proposals exempt under FOIA until final award of contract]; *Morrison-Knudsen Co. v. Dept. of the Army of U.S.* (D.D.C. 1984) 595 F.Supp. 352, 355–356, affd. (D.C. Cir. 1985) 246 U.S. App.D.C. 44 [762 F.2d 138] [agency could delay release to prospective bidder of documents on which Army would rely in preparing its own sealed bid to perform work in-house].)

Petitioner observes, however, that these federal cases and statutes primarily pertain to public agency procurement of goods and services on a "lowest competitive bid" basis, and not to competitive proposals for lease contracts seeking the *highest* competitive bid. Nonetheless, we think the *governing principle* of preserving the confidentiality of competitive proposals for government contracts seems equally applicable to both categories of contracts.

In addition, as the city's opening brief sets forth at length, the great majority of states, by statute or case law, exempt from public disclosure any proposals submitted to public agencies during lease or contract negotiations. Similarly, the American Bar Association's 2000 Model Procurement Code for State and Local Governments provides that "Proposals shall be opened so as to avoid disclosure of contents to competing offerors during the process of negotiation . . . ." (*Id.* § 3-203 (4).) It also provides that the "Register of Proposals shall be . . . open for public inspection after contract award." (*Ibid.*) Although California has not adopted the American Bar Association's Model Procurement Code, and as petitioner observes, technically procurement is not involved here, the provisions of the Model Code are worthy of consideration.

*CONCLUSION*

█ We conclude the trial court correctly ruled that public disclosure of the competing proposals for the city's lease project properly could await conclusion of LAWA's negotiation process. In light of our conclusion that the proposals submitted to the city were, during the negotiation process, exempt under Government Code section 6255 from the disclosure requirements of the Act, we need not consider the city's alternative argument that these proposals were "official information" protected from disclosure under Evidence Code section 1040 and Government Code section 6254, subdivision (k).

The judgment of the Court of Appeal is reversed and the cause remanded for further proceedings consistent with this opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.