Filed 8/31/17

# IN THE SUPREME COURT OF CALIFORNIA

AMERICAN CIVIL LIBERTIES UNION )
FOUNDATION OF SOUTHERN )
CALIFORNIA et al., )
                                                                   )
                 Petitioners, )
                                                                   )          S227106
        v. )
                                                                   )   Ct.App. 2/3 B259392
THE SUPERIOR COURT OF )
LOS ANGELES COUNTY, )
                                                                   )     Los Angeles County
                 Respondent; )     Super. Ct. No. BS143004
                                                                   )
COUNTY OF LOS ANGELES et al., )
                                                                   )
                 Real Parties in Interest. )
_____)

      Real parties in interest, the Los Angeles Police Department (LAPD) of the City of Los Angeles and the Los Angeles Sheriff's Department (LASD) of the County of Los Angeles (collectively, real parties) employ automated license plate reader (ALPR) technology in order to locate vehicles linked to crimes under investigation. The American Civil Liberties Union Foundation of Southern California (ACLU) and Electronic Frontier Foundation (collectively, petitioners) filed a request under the California Public Records Act (CPRA) for all ALPR data

collected during a one-week period.  (Gov. Code, § 6250 et seq.)**1**  Petitioners sought disclosure of this ALPR data "so that the legal and policy implications of the government's use of ALPRs to collect vast amounts of information on almost exclusively law-abiding [citizens of Los Angeles] may be fully and fairly debated."

We initially granted review to determine whether the requested ALPR data are exempt from disclosure as falling within the CPRA provision protecting police and state "[r]ecords of . . . investigations" under section 6254, subdivision (f) (section 6254(f)).  As relevant here, section 6254(f) protects from disclosure: "Records of investigations conducted by . . . any state or local police agency."**2**

After granting review, we requested additional briefing on a second issue: Whether the catchall exemption in section 6255, subdivision (a) (section 6255(a)) authorizes real parties to withhold the requested ALPR data.  Under section 6255(a), a public agency may "justify withholding any record by demonstrating that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."

Petitioners conceded in the trial court that section 6254(f) protects from disclosure the ALPR license plate scan data that matches vehicles linked to law enforcement investigations under section 6254(f).  They do not argue that real parties' use of the ALPR technology is unlawful.  They contend only that ALPR scan data are not exempt from disclosure under the CPRA.

---

**1**      All further statutory references are to the Government Code, unless otherwise specified.

**2**      There is no dispute that ALPR data are public records (see § 6252, subd. (e)) and no dispute that real parties are police agencies subject to the CPRA.

The trial court determined that the data requested came within section 6254(f)'s "[r]ecords of . . . investigations" exemption. The court also concluded that section 6255(a)'s catchall provision authorized real parties to withhold the data. The Court of Appeal affirmed the judgment based on section 6254(f), without reaching the section 6255(a) question. In light of our constitutional obligation to broadly construe the CPRA in a manner that furthers the people's right of access to the conduct of governmental operations, and to narrowly construe any exemptions (Cal. Const., art. I, § 3, subd. (b)(2)), we disagree with the trial court and the Court of Appeal that the ALPR scan data at issue here are subject to section 6254(f)'s exemption for records of investigations. In addition, although we agree with the trial court that the public interest in nondisclosure of raw ALPR scan data clearly outweighs the public interest in disclosure of such data (§ 6255(a)), we remand for further consideration of whether the raw data may reasonably be anonymized or redacted such that the balance of interests would shift and disclosure of the data would be required under the CPRA.

## BACKGROUND

The relevant facts are generally not in dispute. The ALPR data collection system at issue here utilizes high-speed computer-controlled cameras mounted on fixed structures or on patrol cars. The cameras automatically capture an image of the license plate of each vehicle that passes through their optical range. For each image, the ALPR system uses character recognition software and almost instantly checks the license plate number against a list of license plate numbers that have been associated with crimes, child abduction AMBER alerts, or outstanding warrants. This list of license plate numbers comprises the investigative "hot list." When a hot list match occurs, the system alerts either officers in a patrol car or a central dispatch unit, depending on whether the ALPR unit that detects a match is mounted on a patrol car or a fixed structure. Most license plate numbers that

3

ALPR units capture do not match the hot list and have no perceived connection to any crimes, AMBER alerts, or outstanding warrants.[3]

The ALPR technology records each scanned license plate number, together with the date, time, and location of the scan, and stores the data on confidential computer networks. LAPD estimates that it records data from 1.2 million cars per week. It retains license plate scan data for five years. LASD estimates that it records between 1.7 and 1.8 million license plates per week. It retains scan data for two years. When new investigations arise, real parties query their stored databases to obtain any available location history of relevant vehicles. Both the LAPD and LASD restrict database access to law enforcement.

On August 30 and September 4, 2012, petitioners sent substantially identical requests under the CPRA to each of the real parties, seeking "records related to those agencies' use of ALPR technology, including 'all ALPR data collected or generated' during a one-week period in August 2012, consisting of, 'at a minimum, the license plate number, date, time, and location information of each license plate recorded.' " Real parties withheld the requested plate scan data, citing the exemption for law enforcement records of investigations under section 6254(f). Petitioners did not seek disclosure of the hot list itself or records of which license plate numbers matched the hot list.

Petitioners' CPRA request also sought disclosure of "any policies, guidelines, training manuals and/or instructions on the use of ALPR technology and the use and retention of ALPR data, including records on where the data is stored, how long it is stored, who has access to the data, and how long they access the data." Real parties agreed to produce these records.

---

[3]     According to petitioners, "Typically, only about 0.2% of plate scans are connected to suspected crimes or vehicle registration."

On May 6, 2013, petitioners filed a petition for writ of mandate in the Los Angeles County Superior Court to compel disclosure of the requested ALPR data. In opposing the petition, real parties cited the exemption for records of investigation under section 6254(f) as well as the catchall public interest exemption under section 6255(a). After a hearing, the superior court acknowledged the intrusive nature of license plate scanning as well as its potential for abuse. The court concluded, however, that all of the requested data were exempt from disclosure under both sections 6254(f) and 6255(a).

Petitioners sought issuance of an extraordinary writ in the Court of Appeal. After conducting a de novo review (§ 6259, subd. (c)), the Court of Appeal affirmed the trial court's judgment, holding all data exempt from disclosure under section 6254(f). The Court of Appeal did not discuss either section 6255(a)'s balancing test or that statute's potential application to any of the scan data.

## DISCUSSION

1. *The CPRA*

The Legislature enacted the CPRA in 1968. (Stats. 1968, ch. 1473, § 39, p. 2964.) It was modeled after the 1967 federal Freedom of Information Act (5 U.S.C. § 552). (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 290.) The CPRA explains that "access to information concerning the conduct of the people's business is a fundamental and necessary right of every person in this state." (§ 6250.) To promote this fundamental right, the CPRA provides that "every person has a right to inspect any public record, except as hereafter provided." (§ 6253, subd. (a).) "In other words, all public records are subject to disclosure unless the Legislature has expressly provided to the contrary." (*Williams v. Superior Court* (1993) 5 Cal.4th 337, 346 (*Williams*).)

Proposition 59, a measure submitted to the voters in 2004, enshrined the CPRA's right of access in the state Constitution: "The people have the right of

5

access to information concerning the conduct of the people's business, and, therefore, the meetings of public bodies and the writings of public officials and agencies shall be open to public scrutiny." (Cal. Const., art. I, § 3, subd. (b)(1), added by Prop. 59, approved by voters, Gen. Elec. (Nov. 2, 2004).) The state Constitution implemented this right of access with the general directive that a "statute, court rule, or other authority . . . shall be broadly construed if it furthers the people's right of access, and narrowly construed if it limits the right of access." (Cal. Const., art. I, § 3, subd. (b)(2).) Although the CPRA provides for a broad right of access, it "recognizes that certain records should not, for reasons of privacy, safety, and efficient governmental operation, be made public"—including certain records of investigations exempted under section 6254(f). (*Haynie v. Superior Court* (2001) 26 Cal.4th 1061, 1064 (*Haynie*).) We turn first to the scope of that exemption.

2. *Application of section 6254(f)*

Section 6254(f) exempts from mandatory disclosure certain "[r]ecords of . . . investigations conducted by, or records of intelligence information or security procedures of, . . . any state or local police agency," as well as certain "investigatory or security files." (§ 6254(f).) This case requires us to construe the exemption for records of investigations, rather than investigatory files (*Williams*, *supra*, 5 Cal.4th at p. 341) or intelligence information (*American Civil Liberties Union Foundation v. Deukmejian* (1982) 32 Cal.3d 440, 443 (*Deukmejian*)).

Our interpretation of the phrase "[r]ecords of . . . investigations" is guided by familiar principles of statutory interpretation, as well the "constitutional imperative" to construe CPRA in a manner that furthers disclosure. (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616–617 (*City of San Jose*); see *Sierra Club v. Superior Court* (2013) 57 Cal.4th 157, 166.) The parties point us toward various dictionary definitions that they believe advance their positions.

6

Real parties observe, for example, that Black's Law Dictionary defines the term "investigate" to mean "[t]o inquire into (a matter) systematically" or "[t]o make an official inquiry." (Black's Law Dict. (9th ed. 2009), p. 902.) This definition and the others suggested are not specific to the law enforcement or CPRA contexts, however, and afford us only minimal guidance about the meaning of the statutory text. It is enough to say that the definitions of which we are aware do not compel (or even strongly suggest) an answer to the question before us. A closer examination of the CPRA's context, including the presumption in favor of access, is required.

We previously construed the records of investigations exemption in *Haynie*, *supra*, 26 Cal.4th 1061. Elgin Haynie claimed that he was injured by a Los Angeles County Deputy Sherriff during a traffic stop and sought certain public records regarding the incident. (*Id.* at p. 1065.) The sheriff's department refused to provide those records, instead disclosing a " 'summary of the event,' " which asserted that the Deputy " 'received a call from a neighbor who saw several males carrying guns enter an older model dark blue Ford van and travel down the road. The deputy spotted a vehicle matching that description five minutes later and he decided to conduct an investigation of the van.' " (*Id.* at pp. 1065–1066.) The department asserted that the "[r]ecords of . . . investigations" exemption mooted CPRA disclosure. (§ 6254, subd. (f).) Among other things, Haynie responded that " 'records of investigations' should be defined so as to exclude investigations that are merely 'routine' or 'everyday police activity,' such as his traffic stop." (*Haynie*, *supra*, 26 Cal.4th at p. 1070.)

We disagreed. (See *Haynie*, *supra*, 26 Cal.4th at pp. 1070–1071.) In doing so, we discussed the risk that Haynie's proposed interpretation might pose to law enforcement operations. "Complainants and other witnesses whose identities were disclosed might disappear or refuse to cooperate. Suspects, who would be alerted

7

to the investigation, might flee or threaten witnesses.  Citizens would be reluctant to report suspicious activity.  Evidence might be destroyed." (*Id.*, at pp. 1070–1071.)  We also stressed, however, that "by including 'routine' and 'everyday' within the ambit of 'investigations' in section 6254(f), we [did] not mean to shield everything law enforcement officers do from disclosure.  [Citation.]  Often, officers make inquiries of citizens for purposes related to crime prevention and public safety that are unrelated to either civil or criminal investigations.  The records of investigation exempted under section 6254(f) encompass only those investigations undertaken *for the purpose* of determining whether a violation of law may occur or has occurred.  If a violation or potential violation is detected, the exemption also extends to records of investigations conducted *for the purpose* of uncovering information surrounding the commission of the violation and its agency.  Here, the investigation that included the decision to stop Haynie and the stop itself was for the purpose of discovering whether a violation of law had occurred and, if so, the circumstances of its commission.  Records relating to that investigation are exempt from disclosure by section 6254(f)." (*Haynie*, *supra*, at p. 1071, italics added.)

The facts of *Haynie* are quite unlike the facts here.  *Haynie* concerned an individual deputy stopping an individual driver, allegedly based on a single, close in time tip from a neighbor.  This case concerns the collection of enormous amounts of bulk data.  But *Haynie* at least implies that an inquiry must be somewhat targeted at suspected violations of law (see *Haynie*, *supra*, 26 Cal.4th at p. 1071) to qualify as an "investigation[]" under section 6254(f).  The mere fact of an inquiry is not enough.

Our case law recognizes that the CPRA should be interpreted in light of modern technological realities.  (Cf. *City of San Jose*, *supra*, 2 Cal.5th at pp. 618–619 & fn. 4.)  It is hard to imagine that the Legislature intended for the records

8

of investigations exemption to reach the large volume of data that plate scanners and other similar technologies now enable agencies to collect indiscriminately. Nothing in the text or structure of the statute suggests an effort to imbue the term with a meaning that capacious. Indeed, section 6254(f) itself authorizes disclosure of certain portions of records of investigations, such as certain "names and addresses of persons involved in, or witnesses other than confidential informants to, *the incident*." (Italics added.) This language suggests that the Legislature did not contemplate "investigation" of hundreds or thousands of individuals simultaneously—nor, more to the point, an exemption that would cover all data collected during such a far-reaching inquiry.

Of course, the mere fact that the technology for such mass data collection was not in use when the Legislature enacted CPRA does not answer the question before us. As Fourth Amendment jurisprudence illustrates, a provision can apply to new and perhaps unanticipated technologies when the purpose behind the provision will be served. (Cf. *Katz v. United States* (1967) 389 U.S. 347, 353 [wiretaps of phone booths are searches for Fourth Amendment purposes because they impinge on the privacy interests the amendment was designed to protect].) As we recognized in *Haynie*, however, the animating concern behind the records of investigations exemption appears to be that a record of investigation reveals (and, thus, might deter) certain choices that should be kept confidential—an informant's choice to come forward, an investigator's choice to focus on particular individuals, the choice of certain investigatory methods. Such choices are far less likely to be revealed where, as here, data are collected *en masse*. True, the collection of ALPR data can shed light on certain choices, for example, that data are being collected disproportionately in certain neighborhoods. But this kind of revelation seems far less likely to compromise current or future law enforcement, and thus far less likely to prompt the concerns animating section 6254(f).

9

Not only are the concerns underlying the exemption only weakly implicated by the disclosure of the ALPR data, but broadly exempting the data would inflict a far greater blow to the public interest in disclosure than does exempting records concerning more traditional investigations. For example, if all that mattered were whether an agency sought to collect information in connection with a crime (as opposed to no crime at all), real parties could reduce the hot list to a single license plate number, scan literally every plate in Los Angeles, and be able to assert that all of the data collected were exempt from CPRA disclosure as an "investigation" regarding that single plate. In light of CPRA's purpose of providing access to information regarding government activities, we doubt that the records of investigations exemption was intended to stretch that far.

Perhaps the most critical point, however, is one that the Court of Appeal did not mention: Our constitution requires that CPRA exemptions be narrowly construed, including the exemption for "[r]ecords of . . . investigations." (§ 6254(f).) Even before Proposition 59 was enacted, we recognized that not every inquiry is an "investigation" in the relevant sense. (See *Haynie*, *supra*, 26 Cal.4th at pp. 1070-1071.)

Accordingly, we hold that real parties' process of ALPR scanning does not produce records of investigations, because the scans are not conducted as part of a targeted inquiry into any particular crime or crimes. The scans are conducted with an expectation that the vast majority of the data collected will prove irrelevant for law enforcement purposes. We recognize that it may not always be an easy task to identify the line between traditional "investigation" and the sort of "bulk" collection at issue here. But wherever the line may ultimately fall, it is at least clear that real parties' ALPR process falls on the bulk collection side of it.

Nor does the act of querying the database for information on particular vehicles transform existing ALPR scan records into exempt "[r]ecords of . . .

10

investigations" (§ 6254(f)). A plate scan in itself always remains a result of bulk data collection, rather than a record of investigation, even if it has the potential to match a future search query. The fact that a database has been searched or that a plate in the database has been matched in a search does not increase the concerns identified in *Haynie* with respect to disclosure of the database. Moreover, a contrary rule would enable an agency to exempt such data, purportedly to advance some more traditional "investigation," simply by searching the entire database.

Therefore, the bulk collection of raw ALPR data here is not exempt from disclosure under section 6254(f). We do not decide, however, whether an ALPR record that later becomes part of a more targeted investigation might properly be addressed under the investigatory file exemption (§ 6254(f)) which applies to certain "materials that relate to the investigation" if there is a "concrete and definite prospect of enforcement proceedings." (*Williams*, *supra*, 5 Cal.4th at p. 362; compare *Haynie*, *supra*, 26 Cal.4th at pp. 1068-1069 [records of investigation exemption does not require concrete and definite prospect of enforcement].) We next consider whether the ALPR raw data may be withheld under section 6255(a).

3. *Application of section 6255(a)*

Section 6255(a)—CPRA's catchall provision (see *Los Angeles County Bd. of Supervisors v. Superior Court*, *supra*, 2 Cal.5th at p. 291)—permits an agency to withhold a public record if the agency demonstrates "that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." (§ 6255(a).) (See, e.g., *Deukmejian*, *supra*, 32 Cal.3d at pp. 452–454 [construing the application of the catchall provision].) This "provision contemplates a case-by-case balancing process, with the burden of proof on the proponent of nondisclosure to demonstrate a clear overbalance on the side of confidentiality." (*Michaelis, Montanari & Johnson v. Superior Court* (2006) 38 Cal.4th 1065, 1071

11

(*Michaelis*).) Whether such an overbalance exists may depend on a wide variety of considerations, including privacy (*City of San Jose*, *supra*, 2 Cal.5th at p. 626); public safety (*Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 74 (*Long Beach*)); and the "expense and inconvenience involved in segregating nonexempt from exempt information." (*Deukmejian*, *supra*, 32 Cal.3d at pp. 452–453). In balancing the interests for and against disclosure, we review the public interest factors de novo but accept the trial court's factual findings as long as substantial evidence supports them. (*Michaelis*, 38 Cal.4th at p. 1072; see *CBS*, *Inc. v. Block* (1986) 42 Cal.3d 646, 650-651 (*CBS*).)

The trial court determined that the balance of interests under section 6255(a) weighed clearly against disclosure of raw ALPR scan data. We agree. The trial court further determined, however, that even anonymized or redacted plate scan data could be withheld. Because the trial court erred in reaching this conclusion based on the present record, and because the inquiry requires additional factual development, we will remand for further proceedings.

### a. Unaltered plate scan data

As noted, petitioners seek disclosure of unaltered plate scan data, including, " 'at a minimum, the license plate number, date, time, and location information of each license plate recorded.' " Petitioners contend that, among other things, these data could reveal whether law enforcement officers are using ALPR technology to target particular individuals, neighborhoods, or organizations. The data could also shed light on the degree to which ALPR technology threatens individual privacy interests.

The trial court carefully considered these interests. It also recognized, however, that disclosing unaltered plate scan data to the public threatens individuals' privacy. ALPR data showing where a person was at a certain time could potentially reveal where that person lives, works, or frequently visits.

12

ALPR data could also be used to identify people whom the police frequently encounter, such as witnesses or suspects under investigation (albeit to a lesser extent than in the type of situation at issue in *Haynie*). In short, as the trial court observed, "Members of the public would be justifiably concerned about LAPD or LASD releasing information regarding the specific locations of their vehicles on specific dates and times to anyone." Although we acknowledge that revealing raw ALPR data would be helpful in determining the extent to which ALPR technology threatens privacy, the act of revealing the data would itself jeopardize the privacy of everyone associated with a scanned plate. Given that real parties each conduct more than one million scans per week, this threat to privacy is significant. We therefore conclude that the public interest in preventing such disclosure "clearly outweighs the public interest served by disclosure of" these records. (§ 6255(a).)[4]

   b. *Anonymized or redacted plate scan data*

The trial court also considered whether the balance of interests at stake might be altered if ALPR data were anonymized: "for example plate 'G5123AP' could have a random number '1111111' assigned to it." The court assumed for argument's sake that this possibility was "both workable and inexpensive." It rejected the possibility that anonymization of the ALPR data would alter the balance of interests, reasoning that anonymization "would address the individual privacy concerns, but it would not address the impact on law enforcement investigation." We conclude that the trial court placed too much weight on the

---

[4]     Recently enacted Civil Code section 1798.90.5 et seq. does not mention the CPRA, and we do not decide its substantive application here except to note that it prohibits public agencies from selling, sharing, or transferring ALPR data "except to another public agency, and only as otherwise permitted by law." (*Id.*, § 1798.90.52, subd. (a), added by Stats. 2015, ch. 532, § 3, eff. Jan. 1, 2016.) The statute imposes civil fines for its violations. (*Ibid.*)

mere possibility that law enforcement efforts would be frustrated. Because this issue appears to require further factual development, however, we decline to resolve it in the first instance.

The trial court's concerns about interference with law enforcement were multifaceted. The court initially concluded that even if ALPR data were anonymized before release, "[a] criminal could still use [that] data to follow law enforcement patrol patterns and still could locate a particular randomized plate at a particular location on specific days and times."

The trial court appears to have placed significant weight on the possibility that a criminal could use ALPR data to identify law enforcement patrol patterns. The court did so based on the declaration of LAPD Sergeant Daniel Gomez. In pertinent part, Sergeant Gomez claimed that an individual requesting ALPR data "*could* use the data to *try* and identify patterns of a particular vehicle." (Italics added.) However, Sergeant Gomez also seemed to cast doubt on the likelihood that an individual could do so successfully, explaining that "[u]nlike law enforcement that uses additional departmental resources to validate captured [A]LPR information, a private person would be basing their assumptions solely on the data created by the [A]LPR system . . . ." Nevertheless, we will assume, as the trial court found, that a person could at least roughly infer patrol patterns from a week's worth of plate scan data.

The problem with this aspect of the trial court's analysis is that, even assuming patrol patterns can be inferred from ALPR data, there is little reason to believe that this possibility points meaningfully toward "a clear overbalance on the side of confidentiality" with respect to all the records sought. (*Michaelis*, *supra*, 38 Cal.4th at p. 1071.) For one thing, fixed ALPR scanners are just that—fixed— so concerns about patrol patterns are inapplicable to the data they collect. For another, the record does not appear to indicate that knowledge of where law

14

enforcement officers *were* during a particular week is a reliable guide to where they *will be* at some precise moment in the future. The trial court did not find, for example, that real parties conduct law enforcement in the same way that they might operate a bus service—moving from point to point at particular times on particular days, never deviating to attend to other business or emergencies. We are not aware of substantial evidence that would have supported such a finding. Likewise, the court did not determine how often any such routes change, nor whether the addition of new mobile scanners would make it challenging to infer that the absence of a patrol route in the past meant the absence of a patrol route in the future.

The trial court's judgment appears to rest on an additional error. The court concluded that "an officer may make a hot list inquiry into the ALPR system and receive a hit at any time, thereby converting a non-specific scan to evidence in an individualized investigation. Segregation of records in a fluid computerized environment is virtually impossible." This conclusion was also based on the declaration of Sergeant Gomez, who asserted that LAPD's system "does not have the capability *as a native function* to segregate data based on specific parameters." (Italics added.) At the least, the trial court was mistaken to the extent it suggested that the burden of segregating records that *might become* exempt is relevant. Section 6255(a)'s balancing analysis considers the "expense and inconvenience involved in segregating nonexempt from exempt information." (*Deukmejian*, *supra*, 32 Cal.3d 440, 452–453.) If a record is not presently exempt from disclosure, then an agency is not permitted to segregate and withhold it. Moreover, a plate scan does not become exempt merely because it later surfaces in a search of an ALPR database

The critical point is that a court applying section 6255(a) cannot allow "[v]ague safety concerns" to foreclose the public's right of access. (*Long Beach*,

15

*supra*, 59 Cal.4th at p. 74; cf. *CBS*, *supra*, 42 Cal.3d at p. 652 ["A mere assertion of possible endangerment does not 'clearly outweigh' the public interest in access to these records."].)  The trial court appears to have placed significant weight on speculative concerns about possible disclosure of mobile ALPR patrol patterns, without record evidence to support its conclusions.  The court erred in doing so.

Notwithstanding our disagreement with the trial court's reasoning, we do not have a sufficient factual record to determine whether section 6255(a)'s catchall exemption applies.  We therefore will remand for further proceedings.  On remand, the trial court should conduct a new balancing analysis—one that includes consideration of the feasibility of, and interests implicated by, methods of anonymization petitioners have suggested.  The trial court is free to explore other methods of anonymization and redaction as well.

Petitioners have described two anonymization procedures.  The first is the substitution method discussed above:  replacing actual license plate numbers with fictional numbers.  Presumably, each plate would be assigned its own unique (fictional) number, because assigning a random number to each scan, even if multiple scans concern the same plate, would be no more informative than simply removing the plate numbers altogether.  In exploring this possibility, the court should evaluate the risk that a plate number could be inferred from a fictional number.  For example, if plate number "1111111" were repeatedly scanned in front of an office building during the day time, and an apartment building at night, it might be possible to infer the true owner of plate "1111111" and to track their other movements.  A second method would call for disclosure of two sets of ALPR data:  one that discloses the number of times that each license plate has been scanned, and another that contains only the time, date, and location of the scans.

16

With respect to the concern that patrol patterns might be discerned from the anonymized data, petitioners suggest different ways to redact the exact date and time of the scans, so that disclosed records would show a "heat map" of where scans were taken during the week of data petitioners seek, without revealing as much information about the mobile units that collected the scans or the license plates that were subject to them. We note, however, as discussed above, that the current record provides little, if any, support for the concern that the data would enable private individuals to discern patrol patterns. Without such information, it is difficult to see what public interest in nondisclosure could clearly outweigh the public interest in disclosure of this redacted information, but we leave the issue for the trial court to resolve.

The anonymization and redaction methods we discuss may be more feasible than the trial court appeared to believe. Petitioners contend that, even using real parties' information system, it takes just "two computer clicks to export license plate data onto a spreadsheet or other type of document, which the parties can then modify." Accordingly, the trial court's analysis should go beyond whether a method of removing exempt information is "a native function" of "[t]he system utilized by the LAPD." While real parties may not have designed their system to facilitate CPRA disclosure as a "native function," randomizing license plate numbers or deleting columns from a spreadsheet, for example, would seem to impose little burden. We leave the precise balance between effective anonymization and redaction and burden to the trial court on remand. We remind the trial court and the parties, however, that if the anonymized or redacted data are ultimately released, the courts may exercise no restraint on how the data may be used apart from the restrictions placed on its dissemination under Civil Code section 1798.90.5 et seq. (See *Deukmejian*, *supra*, 32 Cal.3d at p. 451.)

17

**CONCLUSION**

We affirm the Court of Appeal judgment insofar as it exempted raw ALPR data from CPRA disclosure.  We reverse the Court of Appeal judgment insofar as it rendered anonymized or redacted ALPR data exempt from disclosure.  We remand the action to the Court of Appeal with instructions to remand the matter to the trial court for further proceedings under section 6255(a) that are consistent with this opinion.

CHIN, J.

WE CONCUR:

CANTIL-SAKAUYE, C. J.
WERDEGAR, J.
CORRIGAN, J.
LIU, J.
CUÉLLAR, J.
KRUGER, J.

18

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** American Civil Liberties Union Foundation of Southern California v. Superior Court
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 236 Cal.App.4th 673
**Rehearing Granted**

_____

**Opinion No.** S227106
**Date Filed:** August 31, 2017
_____

**Court:** Superior
**County:** Los Angeles
**Judge:** James C. Chalfant

_____

**Counsel:**

Peter Bibring and Catherine A. Wagner for Petitioner American Civil Liberties Union Foundation of Southern California.

Jennifer Lynch for Petitioner Electronic Frontier Foundation.

Katie Townsend for the Reporters Committee for Freedom of the Press, American Society of News Editors, Association of Alternative Newsmedia, California Newspaper Publishers Association, Californians Aware, The Center for Investigative Reporting, First Amendment Coalition, Los Angeles Times Communications LLC, The McClatchy Company, The National Press Club, National Press Photographers Association, Online News Association and Society of Professional Journalists as Amici Curiae on behalf of Petitioners.

First Amendment Project, James R. Wheaton and Cherokee D.M. Melton for Northern California Chapter of the Society of Professional Journalists as Amicus Curiae on behalf of Petitioners.

Marc Rotenberg, Alan Butler, Jeramie Scott and Aimee Thomson for Electronic Privacy Information Center as Amicus Curiae on behalf of Petitioners.

Jason D. Russell and Richard A. Schwartz for Senator Jerry Hill as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Jones & Mayer, Martin J. Mayer, James R. Touchstone and Deborah Pernice-Knefel for California State Sheriffs' Association, California Police Chiefs' Association and California Peace Officers' Association as Amici Curiae on behalf of Respondent.

Michael N. Feuer, City Attorney (Los Angeles), Carlos de La Guerra, Managing Assistant City Attorney, Debra L. Gonzales and Amy Jo Field, Assistant City Attorneys, Lisa S. Berger and Heather L. Aubry, Deputy City Attorneys, for Real Parties in Interest City of Los Angeles and Los Angeles Police Department.

**Counsel:**

Collins Collins Muir + Stewart, Eric Brown, Tomas A. Guterres and James C. Jardin for Real Parties in Interest County of Los Angeles and Los Angeles Sheriffs' Department.

Colantuono, Highsmith & Whatley, Aleksan R. Giragosian, Michael G. Colantuono and Michael R. Cobden for League of California Cities and California State Association of Counties as Amici Curiae on behalf of Real Parties in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Peter Bibring
ACLU Foundation of Southern California
1313 West Eighth Street
Los Angeles, CA  90017
(213) 977-5295

Heather L. Aubry
Deputy City Attorney
200 North Main Street, Room 800
Los Angeles, CA  90012
(213) 978-6956

James C. Jardin
Collins Collins Muir + Stewart
1100 El Centro Street
South Pasadena, CA  91030
(626) 243-1100