Filed 1/29/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| XAVIER BECERRA, as Attorney General, etc., et al.<br><br>     Petitioners,<br><br>v.<br><br>THE SUPERIOR COURT OF THE CITY AND COUNTY OF SAN FRANCISCO,<br><br>     Respondent;<br><br>FIRST AMENDMENT COALITION et al.,<br><br>     Real Parties in Interest. | A157998<br><br>(City & County of San Francisco Super. Ct. No. CPF-19-516545) |

The California Public Records Act (CPRA) (Gov. Code, § 6250 et seq.) enshrines the value this state has long placed on government transparency and public access to information concerning the conduct of the people's business. More recently, in acknowledgment of the extraordinary authority vested in peace officers and the serious harms occasioned by misuse of that authority, the Legislature amended Penal Code section 832.7[1] to recognize the right of the public to know about incidents involving shootings by an officer or the use of force by an officer that results in death or great bodily injury, as well as sustained findings of sexual assault or dishonesty by an officer. (Stats. 2018, ch. 988, §§ 1, 2 (Sen. Bill No. 1421), eff. Jan. 1, 2019.) As amended, section 832.7 specifies that records pertaining to such incidents and findings are not confidential and must be made available for public inspection pursuant to the CPRA.

---

[1] All unlabeled statutory references are to the Penal Code.

In this case, California Attorney General Xavier Becerra and the California Department of Justice (collectively, the Department) have filed a petition for a writ of mandate seeking to overturn the trial court's order in favor of First Amendment Coalition and KQED, Inc. (KQED) over two aspects of the Department's disclosure obligations under section 832.7. We conclude, as a matter of statutory interpretation, that section 832.7 generally requires disclosure of all responsive records in the possession of the Department, regardless whether the records pertain to officers employed by the Department or by another public agency and regardless whether the Department or another public agency created the records. Although we also determine, as a matter of statutory interpretation, that the so-called "catchall exemption" of the CPRA, codified at Government Code section 6255, may apply to records that are subject to disclosure under section 832.7, our independent review leads us to conclude the Department did not adequately demonstrate that the public interest served by nondisclosure of the records at issue clearly outweighs the public interest in their disclosure. The petition for writ of mandate is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Xavier Becerra is the Attorney General of the State of California and the chief law officer of the State. Petitioner California Department of Justice is a state agency that employs sworn peace officers and possesses certain records relating to the officers it employs and to officers who are employed by other state and local agencies.

Real party in interest First Amendment Coalition is a non-profit corporation dedicated to advancing free speech rights, ensuring open and accountable government, and promoting public participation in civil affairs. Real party in interest KQED is a community-supported media organization providing coverage of news and culture to Northern California via radio, television, and digital media.

In January 2019, pursuant to the CPRA, First Amendment Coalition requested from the Department all records within its possession subject to disclosure under newly amended section 832.7. Specifically, it asked for "records relating to a report, investigation or finding . . . of any of the following: (1) An incident involving the

2

discharge of a firearm at a person by a peace officer or custodial officer; [¶] (2) An incident in which the use of force by a peace officer or custodial officer against a person resulting in death or in great bodily injury; and/or [¶] (3) An incident in which a sustained finding was made by any law enforcement agency or oversight agency that a peace officer or custodial officer engaged in sexual assault involving a member of the public." It sought records for incidents that occurred in 2016, 2017, and 2018.

In February 2019, pursuant to the CPRA and section 832.7, KQED requested from the Department "[r]ecords from Jan. 1, 2014 to Dec. 31, 2018 of sustained findings that a peace officer, including those employed by the Ca. Dept. of Justice, committed sexual assault or dishonesty-related misconduct." KQED also sought "[r]ecords from Jan. 1, 2014 to present relating to the report, investigation, or findings of incidents in which the use of force by a peace officer or custodial officer against a person resulted in death, or in great bodily injury."

The Department partially denied the requests of First Amendment Coalition and KQED (collectively, real parties), agreeing to produce "only those non-exempt records, if any, relating to peace officers employed by the Department of Justice" subject to applicable redactions. The Department explained its partial denial as follows: "To the extent that the Attorney General has obtained records from other state and local law enforcement agencies, the Attorney General is not the agency that 'maintains' those documents. A requester may properly seek disclosure from the employing agency, which not only maintains the records, but will be best situated to assess any applicable exceptions to the disclosure requirement and any statutorily required redactions concerning sensitive and private information. Further, to the extent that the Attorney General has obtained such records in relation to investigations or proceedings that the Attorney General is conducting, the disclosure provisions in section 832.7 do not apply to the Attorney General, under section 832.7, subdivision (a)."[2]

---

[2]      The scope of potentially responsive records in the Department's possession, and how the Department obtains or creates these records, is not clearly or completely presented in the record on appeal. We make the following observations:

In March 2019, real parties jointly petitioned for a writ of mandate to compel the Department's compliance with their CPRA requests. Real parties asked the trial court to command the Department to "immediately search for and promptly disclose all non-exempt records in [its] possession" sought by their CPRA requests. This included "records that were created by or involve another state or local agency" and "records that concern the Attorney General's own investigations."

In its answer to the petition, the Department admitted that it possessed "certain records sought by [real parties], likely totaling many thousands of such records if not

1. The Department maintains certain records for peace officers it employs. As indicated, to the extent such records are responsive and not subject to any other objections, the Department represents it will produce them subject to proper redaction.

2. At a trial court hearing on May 17, 2019, the Department's counsel represented that the Department "is not a central storehouse for all of the peace officer records for the state and every local agency. There is in fact no centralized agency that exists that contains all of those records."

3. The Department possesses records concerning officers employed by other state or local agencies. According to the Department's petition, "The Department obtains files from law enforcement agencies across the state when it reviews an agency's decision not to file charges in connection with an incident, or when it conducts an independent investigation of a law enforcement agency. The Department often obtains such materials or information using the subpoena power authorized by Government Code section 11181. [Fn. omitted, citation.] Some of that information relates to peace or custodial officers employed by other agencies that are subject to independent review and investigation by the Department and falls into one of the four categories of Penal Code section 832.7, subdivision (b)(1)."

In addition, the record on appeal includes a joint status report, prepared *after* the trial court granted the writ, which states: "The Department sometimes procures confidential records or information that could have been subpoenaed or demanded via interrogatory under Government Code section 11181 by way of stipulated agreements among agencies. These agreements are made under the condition and understanding that the materials will remain confidential as contemplated by Government Code section 11181."

4. It is unclear whether the methods described in paragraph 3 above are the only ways in which the Department comes to possess records involving officers employed by other state and local agencies.

5. There is no indication what kinds of records, if any, the Department may generate when it conducts an independent investigation of a law enforcement agency or when it reviews an agency's decision not to file charges in connection with an incident.

more" and that it "created some but not all of those records." The Department reiterated that neither section 832.7 nor the CPRA required or authorized the disclosure of records it obtained from other state or local law enforcement agencies and further asserted that such records can be requested directly from those agencies.

In July 2019, the trial court granted real parties' writ petition. The court ordered the Department to produce, by January 4, 2020, "all requested records except those records or parts thereof that this court determines may be lawfully withheld or redacted."

The Department now petitions for extraordinary writ relief to compel the trial court to vacate the portion of its order requiring disclosure of records regarding other agencies' officers. We granted the Department's request for an immediate, temporary stay of trial court proceedings, pending further order of this court. We also issued an order to show cause why the relief requested by the Department should not be granted. Real parties requested that their previously filed informal opposition to the petition be deemed a written return to the order to show cause, and the Department filed a traverse/reply. We received briefing from amicus curiae Reporters Committee for Freedom of the Press, joined by six other media and transparency organizations, and the Department's response thereto. We also requested and received supplemental briefing on one of the Department's grounds for nondisclosure. The parties appeared for oral argument.

DISCUSSION

## A. Standard of Review

A trial court order directing disclosure of public records held by a public agency "shall be immediately reviewable by petition to the appellate court for the issuance of an extraordinary writ." (Gov. Code, § 6259, subd. (c).) This court "conduct[s] an independent review of the trial court's ruling; factual findings made by the trial court will be upheld if based on substantial evidence." (*Times Mirror Co. v. Superior Court* (1991) 53 Cal.3d 1325, 1336 (*Times Mirror*).)

## B. Statutory Background

### 1. The CPRA

Enacted in 1968, the CPRA grants public access to public records held by state and local agencies. (Gov. Code, § 6250 et seq.) "Modeled after the federal Freedom of Information Act (5 U.S.C. § 552 et seq.), the [CPRA] was enacted for the purpose of increasing freedom of information by giving members of the public access to records in the possession of state and local agencies. [Citation.] Such 'access to information concerning the conduct of the people's business,' the Legislature declared, 'is a fundamental and necessary right of every person in this state.' " (*Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 290.)

Pursuant to the California Constitution, the CPRA must be "broadly construed" because its statutory scheme "furthers the people's right of access." (Cal. Const., art. 1, § 3, subd. (b)(2).) Nevertheless, the act does not confer an absolute right of access. As part of the CPRA, the Legislature included a provision declaring it was "mindful of the right of individuals to privacy." (Gov. Code, § 6250.) This express policy declaration " 'bespeaks legislative concern for individual privacy as well as disclosure.' [Citation.] 'In the spirit of this declaration, judicial decisions interpreting the [CPRA] seek to balance the public right to access to information, the government's need, or lack of need, to preserve confidentiality, and the individual's right to privacy. [Citations.]' " (*Copley Press, Inc. v. Superior Court* (2006) 39 Cal.4th 1272, 1282 (*Copley Press*).)

The CPRA balances the dual concerns for privacy and disclosure by providing for various exemptions that permit public agencies to refuse disclosure of certain public records. (Gov. Code, §§ 6254–6255.) For instance, the CPRA does not require agencies to permit public inspection of records that are exempted or prohibited from public disclosure pursuant to federal or state law, including Evidence Code provisions relating to privilege. (Gov. Code, § 6254, subd. (k) (hereafter Gov. Code, § 6254(k).) Also, as discussed *post*, law enforcement investigatory files were, until recently, categorically exempted from the CPRA's general requirement of disclosure. (Gov. Code, § 6254, subd. (f) (hereafter Gov. Code, § 6254(f)).) " 'In large part, these exemptions are

6

designed to protect the privacy of persons whose data or documents come into governmental possession.' " (*Copley Press*, *supra*, 39 Cal.4th at p. 1282.) CPRA exemptions are narrowly construed (*American Civil Liberties Union Foundation v. Superior Court* (2017) 3 Cal.5th 1032, 1042 (*ACLU Foundation*), and the agency opposing disclosure bears the burden of proving an exemption applies. (*Long Beach Police Officers Assn. v. City of Long Beach* (2014) 59 Cal.4th 59, 70; *County of Los Angeles v. Superior Court* (2012) 211 Cal.App.4th 57, 63.)

### 2. *Section 832.7 and Senate Bill No. 1421*

In 1978, the Legislature enacted sections 832.7 and 832.8 to mandate confidentiality of peace officer personnel records. (Stats. 1978, ch. 630, §§ 5, 6, p. 2083.) These statutes, along with certain amendments to the Evidence Code, also codified *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*), which recognized the right of a criminal defendant to compel the discovery of evidence in a law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge upon a sufficient showing of good cause. (See *Assn. for Los Angeles Deputy Sheriffs v. Superior Court* (2019) 8 Cal.5th 28, 40–41 (*ALADS*).)

Historically, the so-called *Pitchess* statutes were considered an exemption to disclosure under the CPRA. (See *Copley Press*, *supra*, 39 Cal.4th at p. 1283 [recognizing § 832.7 as an exemption under Gov. Code, § 6254(k)].) Before its amendment in 2018, section 832.7 made certain peace officer records and information confidential and nondisclosable in any criminal or civil proceeding except pursuant to discovery under certain provisions of the Evidence Code. (See § 832.7, subd. (a), as amended by Stats. 2003, ch. 102, § 1 (hereafter fmr. § 832.7).) The first category of confidential records pertained to "[p]eace officer or custodial officer personnel records," which included among other things certain records that relate to employee discipline or certain complaints and to investigations of complaints pertaining to how the officer performed his or her duties. (*Ibid.*; § 832.8) The second category consisted of "records maintained by any state or local agency pursuant to section 832.5" (fmr. § 832.7, subd. (a)), which required "[e]ach department or agency in [California] that employs peace officers [to]

7

establish a procedure to investigate complaints by members of the public against the personnel of these departments or agencies" and further required such "[c]omplaints and any reports or findings relating" to them be retained for "at least five years" and "maintained either in the peace or custodial officer's general personnel file or in a separate file" (§ 832.5, subds. (a)(1), (b); see also § 832.5, subds. (c), (d)(1)). The third category extended confidentiality to "information obtained from" the prior two types of records. (Fmr. § 832.7, subd. (a).) Thus, the *Pitchess* statutes " 'reflect[] the Legislature's attempt to balance a litigant's discovery interest with an officer's confidentiality interest.' " (*ALADS*, *supra*, 8 Cal.5th at p. 41.)

In 2018, the Governor signed Senate Bill No. 1421 (hereafter SB 1421), which amended section 832.7. (§ 832.7, as amended by Stats. 2018, ch. 988, § 2, eff. Jan. 1, 2019.) Under SB 1421, section 832.7 retains the provision that "personnel records of peace officers and custodial officers and records maintained by any state or local agency pursuant to Section 832.5, or information obtained from these records, are confidential and shall not be disclosed" in any criminal or civil proceeding except pursuant to discovery under certain portions of the Evidence Code. (§ 832.7, subdivision (a) (hereafter § 832.7(a)); see also § 832.7, subd. (h).) As amended, however, section 832.7(a) now provides that the confidentiality of officer personnel records is subject to a newly added subdivision (b) (hereafter § 832.7(b)), which states in relevant part: "Notwithstanding subdivision (a) [of section 832.7], subdivision (f) of Section 6254 of the Government Code, [3] or any other law, the following peace officer or custodial officer personnel records and records maintained by any state or local agency shall not be confidential and shall be made available for public inspection pursuant to the California

---

[3] Government Code section 6254(f) is a CPRA provision that exempts disclosure of "[r]ecords of complaints to, or investigations conducted by, or records of intelligence information or security procedures of, the office of the Attorney General and the Department of Justice, the Office of Emergency Services and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes."

8

Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code)" (§ 832.7, subd. (b)(1) (hereafter § 832.7(b)(1)), namely, records "relating to the report, investigation, or findings" of an incident falling into any of the following three categories: (1) an incident in which an officer discharged a firearm at a person or used force against a person resulting in death or great bodily injury (§ 832.7, subd. (b)(1)(A)(i), (ii)); (2) "an incident in which a sustained finding was made by any law enforcement agency or oversight agency" that an officer "engaged in sexual assault involving a member of the public" (§ 832.7, subd. (b)(1)(B)(i)–(iii)); and (3) "an incident in which a sustained finding was made by any law enforcement agency or oversight agency of dishonesty by a peace officer or custodial officer directly relating to the reporting, investigation, or prosecution of a crime, or directly relating to the reporting of, or investigation of misconduct by, another peace officer or custodial officer, including, but not limited to, any sustained finding of perjury, false statements, filing false reports, destruction, falsifying, or concealing of evidence" (§ 832.7, subd. (b)(1)(C)). This opinion will hereafter refer to these three categories of records collectively as "officer-related records."

Even though these officer-related records are now subject to disclosure, section 832.7 reflects continuing legislative concern for certain privacy and safety interests and competing public interests. Specifically, section 832.7(b) provides that an agency responding to a record request "shall redact" disclosed records for the following purposes only: to remove personal data or information outside the name and work-related information of the officers; to preserve the anonymity of complainants and witnesses; to protect confidential medical, financial, or other information whose disclosure is specifically prohibited by federal law or would cause an unwarranted invasion of personal privacy that outweighs the public's interest in the records; and where there is reason to believe that disclosure of the record would pose a significant danger to the physical safety of the officer or another person. (§ 832.7, subd. (b)(5)(A)–(D).) Subdivision (b) also provides that, notwithstanding subdivision (b)(5), an agency "may redact a record disclosed pursuant to this section . . . where, on the facts of the particular

9

case, the public interest served by not disclosing the information clearly outweighs the public interest served by disclosure of the information." (§ 832.7, subd. (b)(6).) Additionally, an agency "may" temporarily withhold records of incidents involving an officer's discharge of a firearm or use of force resulting in death or great bodily injury by delaying disclosure when the incidents are the subject of an active criminal or administrative investigation. (§ 832.7, subd. (b)(7)(A), (B), (C).)

**C. Scope of Disclosure Under the CPRA and Section 832.7**

This case presents issues of first impression concerning the scope of a public agency's disclosure obligations under the CPRA and section 832.7. The first issue is whether section 832.7 contemplates disclosure of officer-related records in the Department's possession if such records concern officers who are not employed by the Department or if such records were not created by the Department. This is a matter of statutory interpretation, which we review de novo. (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1247.)

" ' "When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. We do not examine that language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment. If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy.' [Citation.] 'Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose.' " ' [Citation.]" (*Meza v. Portfolio Recovery Associates, LLC* (2019) 6 Cal.5th 844, 856–857 (*Meza*).)

As a court, we have a "limited role in the process of interpreting enactments from the political branches of our state government." (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 632 (*California Teachers*).) Our role is "not to establish policy" (*Carrisales v. Department of Corrections* (1999) 21 Cal.4th 1132, 1140) or to question legislative policy choices (*People v. Bunn* (2002) 27 Cal.4th 1, 17). Rather, "we follow the Legislature's intent, as exhibited by the plain meaning of the actual words of the law, ' " 'whatever may be thought of the wisdom, expediency, or policy of the act.' " ' " (*California Teachers*, at p. 632.)

With these principles in mind, we begin our analysis by examining the language of section 832.7 and the CPRA.

The language of section 832.7(b)(1) states in relevant part: "Notwithstanding subdivision (a) [of section 832.7], subdivision (f) of Section 6254 of the Government Code, or any other law, the following *peace officer or custodial officer personnel records and records maintained by any state or local agency* shall not be confidential and shall be made available for public inspection pursuant to the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code)." (Italics added.) Read together with its subparts, section 832.7(b)(1) deems as nonconfidential—and subject to public inspection pursuant to the CPRA—all records maintained by a state agency relating to reports, investigations, or findings from incidents involving an officer's discharge of a weapon; an officer's use of deadly force or force resulting in great bodily injury; and incidents involving a sustained finding of a sexual assault or dishonesty by an officer. (§ 832.7, subd. (b)(1)(A)–(C).)

Because section 832.7(b)(1) specifies that the identified officer-related records are now nonconfidential public records that "shall be made available for public inspection pursuant to the [CPRA]," we look to the CPRA provisions governing the disclosure of public records. The CPRA stipulates that "[p]ublic records are open to inspection at all times during the office hours of the state or local agency and *every person has a right to inspect any public record*, except as hereafter provided." (Gov. Code, § 6253, subd. (a), italics added.) The CPRA defines the term "public records" broadly as including "*any*

*writing* containing information relating to the conduct of the public's business *prepared, owned, used, or retained by any state or local agency* regardless of physical form or characteristics." (Gov. Code, § 6252, subd. (e), italics added.) A plain reading of these two CPRA statutes and the italicized language therein leads to the conclusion that, ordinarily, members of the public may inspect "any" public record "retained by" or in the possession of a state agency such as the Department, even if the record was not "prepared, owned, [or] used" by the particular agency. (See also Gov. Code, § 6253, subd. (c) [contemplating disclosure of "public records in the possession of the agency"].)

Whether section 832.7 is considered on its own or in conjunction with the CPRA, the statutory language appears unambiguous in contemplating disclosure of the records in dispute. Standing on its own, section 832.7's statutory phrase "peace officer . . . personnel records *and records maintained by any state or local agency*" (italics added) makes clear that officer-related records in the Department's possession are subject to disclosure, regardless whether such records concern peace officers employed by the Department or by another state or local agency (hereafter non-Department officers), and no matter which agency created them. Such a reading is only reinforced when considered together with the CPRA, which explicitly states that, except as provided by the CPRA, a member of the public has the right to inspect "any writing containing information relating to the conduct of the public's business . . . retained by" a state or local agency. (Gov. Code, § 6252, subd. (e).)

In disputing this construction, the Department argues that when read as a whole and in context, section 832.7 "plainly requires an officer's employing agency—but no other agency—to disclose records." The Department reasons as follows. When subdivisions (a) and (b) of section 832.7 are considered together, the records made nonconfidential by subdivision (b) are regulated by subdivision (a), which informs the universe of records that are subject to disclosure under section 832.7. Section 832.7(a) explicitly shields "records maintained by any state or local agency *pursuant to section 832.5*," which in turn requires employing agencies to establish procedures for investigating public complaints against its officers and to maintain records of those

12

complaints and any related investigation.  (§§ 832.5, 832.7(a).)  Thus, in the Department's view, section 832.7(b)'s command that "records maintained by any state or local agency shall not be confidential" is limited to records maintained pursuant to section 832.5, i.e., those in the possession of an officer's employing agency.  We are not persuaded.

The flaw in the Department's analysis is that section 832.7(b), on its face, explicitly states its provisions are not circumscribed by subdivision (a).  (§ 832.7(b)(1) ["Notwithstanding subdivision (a)"].)  Accordingly, the records made nonconfidential in subdivision (b) are neither restricted nor regulated by subdivision (a).

Moreover, had the Legislature intended to limit its disclosure amendments to records maintained by an officer's employing agency or to records created by a public agency, it easily could have.  Significantly, section 832.7(a) is explicit in imposing confidentiality over "records maintained by any state or local agency *pursuant to section 832.5*."  (§ 832.7(a), italics added.)  If the Legislature had wanted to restrict access to officer-related records maintained by an employing agency, it could have repeated in subdivision (b) the same "pursuant to section 832.5" qualification it used in subdivision (a).  Alternatively, it could have utilized the phrase "and *employee-related* records maintained by any state or local agency," or other similar wording.  But the Legislature did neither, and we will not add words it has chosen to omit.  (See *Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 350 (*Hampton*) ["[o]rdinarily we are not free to add text to the language selected by the Legislature"]; *Rojas v. Superior Court* (2004) 33 Cal.4th 407, 423.)

Finally, as indicated above, the Department's construction is at odds with the CPRA, which provides in no uncertain terms that, barring an applicable exemption, a member of the public has the right to inspect any nonexempt "public records," defined as "any writing" containing information relating to the public's business that is "retained by" a state or local agency.  (Gov. Code, § 6252, subd. (e); see *id*., § 6253, subd. (a).)

13

Although we need not go further because the statutory language is unambiguous, we will "look to legislative history to confirm our plain-meaning construction of [the] statutory language." (*Hughes v. Pair* (2009) 46 Cal.4th 1035, 1046 (*Hughes*).)

Here, the legislative history of SB 1421 discloses that, at the time the proposed amendments to section 832.7 were pending, the Legislature perceived California as "one of the most secretive states in the nation in terms of openness when it comes to officer misconduct and uses of force." (Sen. Rules Com., Off. of Sen. Floor Analyses, Sen. Bill No. 1421 (2017–2018 Reg. Sess.) as amended Aug. 23, 2018, p. 8 (hereafter Sen. Floor Analysis).) In particular, the Legislature pointed to a 2006 Supreme Court ruling interpreting 832.7 as "prevent[ing] the public from learning the extent to which officers have been disciplined as a result of misconduct, and . . . clos[ing] to the public *all independent oversight investigations, hearings and reports*." (Sen. Floor Analysis, p. 8, italics added.) Thus, it appears the Legislature viewed the then-existing lack of public access to records involving independent oversight investigations as a significant impediment to transparency regarding officer misconduct and use of force incidents.

In the Legislature's view, greater transparency would promote important public policies. As one legislative committee commented, SB 1421's author urged the bill's passage because it "benefits law enforcement and the communities they serve by helping build trust. Giving the public, journalists, and elected officials access to information about actions by law enforcement will promote better policies and procedures that protect everyone. We want to make sure that good officers and the public have the information they need to address and prevent abuses and to weed out the bad actors. SB 1421 will help identify and prevent unjustified use of force, make officer misconduct an even rarer occurrence, and build trust in law enforcement." (Assem. Com. on Public Safety, Rep. on Sen. Bill No. 1421 (2017–2018 Reg. Sess.) as amended June 19, 2018, p. 4 (hereafter Assem. Com. on Public Safety Rep.).)

In contemplating the bill's effects, another legislative analysis stated: "SB 1421 opens police officer personnel records in very limited cases, allowing local law enforcement agencies *and law enforcement oversight agencies* to provide greater

14

transparency around only the most serious police complaints." (Sen. Rules Com., third reading analysis of Sen. Bill No. 1421 (2017–2018 Reg. Sess.) as amended May 25, 2018, p. 7, italics added (hereafter Sen. Rules third reading).) At least one Assembly committee report highlighted the language in SB 1421 providing that "*notwithstanding any other law*, [certain enumerated] peace-officer or custodial-officer personnel records are not confidential and shall be made available for public inspection pursuant to the [CPRA].") (Assem. Com. On Public Safety Rep., *supra*, p. 1.) Underscoring this desire for greater access and transparency, including access to records maintained by law enforcement oversight agencies, the Legislative Counsel's Digest for SB 1421 explained: "This bill would require, notwithstanding any other law, certain peace officer or custodial officer personnel records *and records relating to specified incidents, complaints, and investigations involving peace officers and custodial officers* to be made available for public inspection pursuant to the California Public Records Act." (Legis. Counsel's Dig., Sen. Bill No. 1421 (2017–2018 Reg. Sess.) italics added.)

The legislative findings accompanying SB 1421 further emphasize the public interest in making serious officer misconduct records accessible: "(a) Peace officers help to provide one of our state's most fundamental government services. To empower peace officers to fulfill their mission, the people of California vest them with extraordinary authority—the powers to detain, search, arrest, and use deadly force. Our society depends on peace officers' faithful exercise of that authority. Misuse of that authority can lead to grave constitutional violations, harms to liberty and the inherent sanctity of human life, as well as significant public unrest. [¶] (b) The public has a right to know all about serious police misconduct, as well as about officer-involved shootings and other serious uses of force. Concealing crucial public safety matters such as officer violations of civilians' rights, or inquiries into deadly use of force incidents, undercuts the public's faith in the legitimacy of law enforcement, makes it harder for tens of thousands of hardworking peace officers to do their jobs, and endangers public safety." (Stats. 2018, ch. 988, § 1 (Sen. Bill No. 1421).)

15

As the foregoing demonstrates, the legislative intent behind SB 1421 was to provide transparency regarding instances of an officer's use of significant force and sustained findings of officer misconduct by allowing public access to officer-related records maintained either by law enforcement employers or by any state or local agency with independent law enforcement oversight authority. Moreover, in amending section 832.7, the Legislature sought to afford the public "the right to know all about serious police misconduct," to stop concealing incidents where an officer violated civilian rights, and to "address and prevent abuses and weed out the bad actors." (Stats. 2018, ch. 988, § 1 (Sen. Bill No. 1421); Assem. Com. on Public Safety Rep., *supra*, p. 4.) These legislative aims are best advanced by a construction that authorizes disclosure of all responsive officer-related records in the possession of a state agency, regardless whether they pertain to officers employed by the agency and no matter which agency created them.

The Department contends otherwise. In its view, the legislative history demonstrates that SB 1421 "was only intended to require employing agencies to make the required disclosures." But the only portion of the legislative history the Department cites is the report of the Assembly Committee on Public Safety, observing that SB 1421 "loosens the protections afforded to specified peace officer records relating to use of force, sexual assault on a member of the public and pertaining to dishonesty in reporting, investigating, or prosecuting a crime." (Assem. Com. on Public Safety Rep., *supra*, p. 5.) It is unclear how that comment provides any support for the Department's position, particularly in view of the actual language of section 832.7 and the CPRA and the other legislative history cited above. The rest of the Department's legislative history analysis focuses for the most part on the history of the original 1978 enactment of section 832.7, which reveals nothing regarding the Legislature's intent in approving SB 1421 in 2018.

Contrary to the Department's contentions, the legislative history does not even remotely suggest that disclosure obligations should be limited to an officer's employing agency. Rather, as we have discussed, the history is replete with evidence of the Legislature's intent to promote greater transparency with respect to the officer-related

16

records specified in section 832.7, whether such records are maintained by officer employers or by other agencies exercising independent law enforcement oversight responsibilities.

Finally, the Department contends that employing agencies "are in the best possible position to ensure that records regarding their own officers, investigations, prosecutions, or other actions are properly reviewed and redacted to remove sensitive, confidential information that subject officers and third parties to a risk of danger or unnecessary disclosure of confidential information." That may be so, but such a policy argument affords no ground for a judicial interpretation that shields responsive records in the Department's possession, especially in light of statutory allowances for consultation with other agencies in processing CPRA requests. (See Gov. Code, § 6253, subd. (c)(3) [time for responding to requests may be extended where "need for consultation . . . with another agency having substantial interest in the determination of the request" arises].)

Our interpretation of the CPRA and section 832.7 not only promotes the purposes reflected in the statutory language and legislative history, it harmonizes with the constitutional principle that the people have a right to access information concerning the conduct of the people's business and that restrictions on this right are narrowly construed. (Cal. Const., art. I, § 3, subd. (b)(1)–(2).)

Our construction also aligns with case law rejecting the notion that a record's location, rather than its content, determines its confidentiality. In *Commission on Peace Officer Standards & Training v. Superior Court* (2007) 42 Cal.4th 278 (*CPOST*), a newspaper sought the release of information in a database collected by the Commission on Peace Officer Standards and Training, a state agency that sets minimum selection and training standards for peace officers. (*Id.* at pp. 285–286.) The database—which included employment data on all peace officers appointed in California starting in the 1970s—was compiled from information provided by local law enforcement agencies obtained from the officers' personnel records. (*Id.* at p. 286.) The Commission argued certain employment information (a peace officer's name, employing agency, and employment dates) was exempt from disclosure under the CPRA because it was based on

17

records that had been placed in confidential personnel files.  (*Id.* at pp. 286–287.)  The *CPOST* court held this otherwise nonconfidential information does not become confidential for purposes of sections 832.7 and 832.8 merely because it was derived from a personnel file that also contains confidential information.  (*Id.* at pp. 289–293.)  In rejecting an interpretation that made confidentiality turn on the type of file in which records are located, the court found it "unlikely the Legislature intended to render documents confidential based on their location, rather than their content."  (*Id.* at p. 291.)  The conclusion we reach here with respect to the disclosure of officer-related records is similarly driven by the content of the record, not other factors such as which agency employed the officer or created the record.

### D.  The CPRA Catchall Exemption

The second issue before us is whether officer-related records that are subject to disclosure under section 832.7 may nonetheless be withheld pursuant to the catchall exemption set forth in the CPRA.  This exemption, codified in Government Code section 6255, subdivision (a) (hereafter Government Code section 6255(a)), permits a public agency to withhold a public record under the CPRA if the agency demonstrates "that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."  (Gov. Code, § 6255(a).)  The catchall exemption " 'contemplates a case-by-case balancing process, with the burden of proof on the proponent of nondisclosure to demonstrate a clear overbalance on the side of confidentiality.' "  (*ACLU Foundation*, *supra*, 3 Cal.5th at p. 1043.)

#### 1.  *Availability of the CPRA Catchall Exemption*

The trial court declined to decide whether the catchall exemption is available to a public agency that receives a CPRA request for section 832.7 officer-related records.  The parties' original and supplemental briefs, however, address this issue.[4]  The

---

[4]     On November 13, 2019, this court ordered the parties to file simultaneous supplemental letter briefs addressing the following two questions that touch on the issue: "1. Can the redaction provision in Penal Code section 832.7, subdivision (b)(6), be

Department contends that requests for section 832.7 records may be subject to this CPRA exemption, while real parties argue that section 832.7's newer and more detailed provisions for redacting or withholding records must be deemed to prevail over the more general CPRA exemption. We conclude, as a matter of statutory construction, that the CPRA catchall exemption may apply to requests for section 832.7 officer-related records.

As before, we begin as we must with the statutory language. (*Meza*, *supra*, 6 Cal.5th at pp. 856–857.) Also, when construing the interaction of two potentially conflicting statutes, we must, where reasonably possible, harmonize them, reconcile their seeming inconsistencies, and adopt a construction that gives " 'force and effect to all of their provisions.' " (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805.) If that cannot be done, then as a general rule, " 'later enactments supersede earlier ones [citation], and more specific provisions take precedence over more general ones.' " (*Lopez v. Sony Electronics, Inc.* (2018) 5 Cal.5th 627, 634.)

The parties contend, and we concur, that we should again focus on the language of section 832.7(b)(1), which states in relevant part: "Notwithstanding subdivision (a), subdivision (f) of Section 6254 of the Government Code, or any other law, the following peace officer or custodial officer personnel records and records maintained by any state or local agency shall not be confidential and shall be made available for public inspection pursuant to the California Public Records Act (Chapter 3.5 (commencing with Section 6250) of Division 7 of Title 1 of the Government Code) . . . ."

Taken as a whole, that language reasonably reflects the Legislature's intent to preserve, not override, the CPRA but for its investigatory files exemption (Gov. Code, § 6254(f)). Specifically, section 832.7(b)(1) starts off by stating plainly that officer-

---

harmonized with the catchall provision in Government Code section 6255, subdivision (a), and if so, how? If not, which provision prevails over the other? [¶] 2. Is the balancing test referenced in Penal Code section 832.7, subdivision (b)(6), performed in the same manner as the balancing test referenced in Government Code section 6255, subdivision (a)? If not, please address the differences."

related records are nonconfidential and disclosable notwithstanding the CPRA investigatory files exemption, then concludes by stating equally plainly that such records "shall be made available . . . pursuant to the California Public Records Act."  By including these two express references to the CPRA in this one sentence, the Legislature signaled its intent that officer-related records are no longer confidential under the CPRA's investigatory files exemption but that the CPRA is otherwise essential to section 832.7's operation.

At the same time, there is nothing in the balance of the statutory text giving any indication that the CRPA as a whole was displaced by section 832.7.  Indeed, setting aside for the moment the language referencing the CPRA at the end of section 832.7(b)(1), its beginning phrase "[n]otwithstanding . . . any other law" cannot reasonably be read to do away with the entire CRPA.  That particular phrase has been deemed a " ' "term of art" . . . that declares the legislative intent to override all *contrary* law.' "  (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 983.)  Thus, "only those provisions of law that conflict with" section 832.7(b)—"not . . . every provision of law"—are inapplicable.  (*Ibid.*)  As we discuss, *post*, Government Code section 6255(a) is not directly contrary to the disclosure or redaction provisions in section 832.7.  It therefore survives.

Highlighting the prefatory "[n]otwithstanding . . . any other law" language, real parties argue that all responsive officer-related records are nonconfidential regardless of any contrary law, including the CPRA and its catchall exemption.  But this sweeping construction of the prefatory language renders its express abrogation of one particular CPRA exemption—Government Code section 6254(f)—superfluous in violation of the fundamental principle that " '[c]ourts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.' "  (*Big Creek Lumber Co. v. County of Santa Cruz* (2006) 38 Cal.4th 1139, 1155.)  Because the prefatory language references this single CPRA exemption, it seems unlikely that the Legislature contemplated the clause as encompassing other CPRA exemptions.  (See *CPOST*, *supra*, 42 Cal.4th at p. 294 ["when a statute contains a list or catalogue of items,

20

a court should determine the meaning of each by reference to the others . . . . In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more expansive meaning would make other items in the list unnecessary or redundant"].) Indeed, had the Legislature intended for section 832.7 to override the CPRA catchall exemption, it could have explicitly said so, as it did for Government Code section 6254(f) and in other statutes. (See, e.g., Gov. Code, § 54957.5, subd. (a) ["[n]otwithstanding Section 6255 or any other law, agendas of public meetings and any other writings, when distributed to all, or a majority of all, of the members of a legislative body of a local agency by any person in connection with a matter subject to discussion or consideration at an open meeting of the body, are disclosable public records under the California Public Records Act, and shall be made available upon request without delay"].) It is not our role to add an exemption to a statute that the Legislature chose not to include. (See *Hampton*, *supra*, 62 Cal.4th at p. 350.)

We again look to the legislative history of the section 832.7 amendments for confirmation of the appropriate construction. (*Hughes*, *supra*, 46 Cal.4th at p. 1046.) Here, the legislative history reflects the Legislature's awareness of the CPRA catchall exemption, as well as several other CPRA exemptions apart from the law enforcement investigatory files exemption set forth in Government Code section 6254(f). (See Assem. Com. on Public Safety Rep., *supra*, pp. 3, 4, 5, 7.) Despite such awareness, none of the committee reports or analyses made any mention of an intent to nullify or override the catchall exemption via the amendments to section 832.7. That both the language and legislative history of the section 832.7 amendments are silent as to the abrogation of any CPRA exemption—except for the investigatory files exemption—strongly suggests that requests seeking section 832.7 officer-related records remain otherwise subject to the CPRA catchall exemption.

Real parties counter that the Legislative Counsel's Digest includes statements that SB 1421 "would define the scope of disclosable records," that the amendments to section 832.7 "would require, notwithstanding any other law, certain [records] . . . be made available for public inspection," and that discussed in detail the specific redactions and

21

withholdings permitted by the amendments. (Legis. Counsel's Dig., Sen. Bill No. 1421 (2017–2018 Reg. Sess.) ¶ 2.) But nothing in these statements or in the Legislative Counsel's Digest as a whole suggests the Legislature intended to limit application of the entire CPRA when it amended section 832.7. Because the language of section 832.7(b) is to the contrary—expressly requiring that records be made available "pursuant to the California Public Records Act" while specifically abrogating only one particular CPRA exemption (Gov. Code, § 6254(f))—it appears more reasonable to construe the Digest's reference to the "scope of disclosable records" as encompassing both the detailed redaction and withholding provisions of section 832.7 and any otherwise applicable CPRA exemption. (See *Regents of University of California v. Superior Court* (2013) 222 Cal.App.4th 383, 400–401 ["disclosable" records are those "not subject to any one or more of the [CPRA's] many exemptions from disclosure"].)

Moreover, construing the CPRA catchall exemption as applying to requests for section 832.7 records honors the Legislature's longstanding recognition that there may be competing public interests at stake in a public records request and that public records are properly withheld if an agency can demonstrate, on the facts of the particular case, that the public interest served by nondisclosure "clearly outweighs" the public interest served by disclosure. (Gov. Code, § 6255(a); see *Times Mirror, supra,* 53 Cal.3d at p. 1339.) In this regard, the catchall exemption has been used to justify withholding documents based on a range of public interests, including the " 'expense and inconvenience involved in segregating nonexempt from exempt information.' " (*ACLU Foundation*, *supra*, 3 Cal.5th at p. 1043.) As the Supreme Court has explained, a refusal to place public concern with the cost and efficiency of government "on the section 6255 scales would make it possible for any person requesting information, for any reason or for no particular reason, to impose upon a governmental agency a limitless obligation. Such a result

would not be in the public interest." (*American Civil Liberties Union v. Deukmejian* (1982) 32 Cal.3d 440, 453 (*Deukmejian*).)[5]

True, none of the redaction and withholding provisions of section 832.7 explicitly accounts for the public interest in government cost and efficiency, or any other public interest that may fall within the scope of the CPRA catchall exemption. But subjecting requests for section 832.7 officer-related records to potential application of this catchall exemption simply means that otherwise responsive records may be withheld only in those instances where the public agency adequately demonstrates that, due to the facts of a particular case, the public interest in nondisclosure clearly outweighs the public interest in disclosure. Notably, Government Code section 6255 has not, to our knowledge, been criticized as an unworkable or overly broad exemption that unduly impairs government transparency or meaningful public access to information. We see no statutory or legislative policy basis for concluding that SB 1421 intended to extinguish this longstanding exemption that permits withholding only where the public interest predominates in favor of nondisclosure.

Real parties further observe that section 832.7 has a catchall provision of its own—codified in subdivision (b)(6) (hereafter section 832.7(b)(6))—that allows an agency to "redact a record disclosed pursuant to this section, including personal identifying information, where, on the facts of the particular case, the public interest served by not disclosing the information clearly outweighs the public interest served by

---

[5]     Indeed, our construction benefits from the consistency of harmonizing aspects of the two statutes wherever possible. It would seem anomalous to construe section 832.7 as requiring that records be made available pursuant to the CPRA but disregarding the CPRA's contemplation that records should be withheld when the public interest in doing so clearly outweighs the public interest in disclosure.

the disclosure of the information." (§ 832.7(b)(6).)  In real parties' view, this provision is rendered superfluous if the CPRA catchall provision applies.[6]

We cannot agree.  The CPRA catchall exemption authorizes the nondisclosure of a record when a determination is made by the public agency (or the court if the agency's determination is challenged) that "on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record."  (Gov. Code, § 6255(a).)  As discussed, this exemption permits withholding based on various considerations, including public fiscal and administrative concerns regarding the " 'expense and inconvenience involved in segregating nonexempt from exempt information' " (*ACLU Foundation*, *supra*, 3 Cal.5th at p. 1043), and is an integral part of the CPRA framework that, at the outset, allows a determination that the interest of the public is best served by the nondisclosure of otherwise responsive records.  (E.g., *Deukmejian*, *supra*, 32 Cal.3d at pp. 453–454.)  Meanwhile, section 832.7(b)(6) may apply once the agency or the court determines that responsive records are not exempt from disclosure.  That is, after the agency or the court determines that responsive records may not be withheld under the CPRA catchall exemption (or any other applicable exemption), the purpose that section 832.7(b)(6) serves is to authorize redaction of specific information contained in those records when redaction best serves the public interest.[7]

Real parties further argue that Government Code section 6255 directly conflicts with two other of section 832.7's subdivisions that more specifically restrict record

---

[6]     In response to this court's request for supplemental briefing, the parties appear to agree that the section 832.7(b)(6) balancing test is performed in the same manner as the CRPA catchall exemption balancing test.

[7]     In their supplemental briefing, real parties emphasize that subdivision (b)(6) was added to section 832.7 late in the legislative process at a time when the proposed statute contained only the redaction provisions in subdivision (b)(5).  In response to the requests of both parties, we take judicial notice of the legislative history materials for SB 1421.  Contrary to real parties' suggestion, however, the late addition of that subdivision did not reflect a legislative intent to disallow redaction or withholding under the CPRA catchall exemption, and the two provisions are reasonably harmonized.

withholding or redaction  The first identified subdivision allows a public entity to withhold records due to a pending investigation or prosecution, but only temporarily and subject to certain reporting requirements to explain the delay.  (§ 832.7, subd. (b)(7)(A)(i)-(iii).)  The second identified subdivision provides that an agency "shall redact" a record disclosed pursuant to section 832.7 only with regard to an officer's non-work-related personal data or information; preservation of complainant or witness anonymity; confidential medical, financial, or other information under certain enumerated circumstances; and where there is reason to believe that disclosure "would pose a significant danger" to the safety of the officer or another person.  (§ 832.7, subd. (b)(5)(A)–(D).)

We conclude the statutes are reasonably harmonized to effectuate their respective purposes.  Again, because the CPRA catchall exemption contemplates a variety competing public interests including privacy, public safety, and public fiscal and administrative concerns (*ACLU Foundation*, *supra*, 3 Cal.5th at p. 1043), it may apply more broadly than the withholding provision in section 832.7, subdivision (b)(7)(A), which is limited to active investigations.  It also has a broader reach than section 832.7, subdivision (b)(5), which applies to nonexempt officer-related records and focuses on personal data and information and other specific situations triggered by information within those records.  Real parties have identified no irreconcilable conflict in the simultaneous operation of these provisions.

On a final note, we observe that operation of the CPRA catchall exemption should not frustrate section 832.7's aim to provide greater transparency around officer misconduct issues.  Although Government Code section 6255(a) allows for nondisclosure upon a proper showing, the CPRA requires that "[a]ny reasonably segregable portion of a record shall be available for inspection by any person requesting the record after deletion of the portions that are exempted by law" (Gov. Code, § 6253, subd. (a)).  Thus, while responsive records may be and have been entirely withheld under the CPRA catchall exemption, a public agency remains otherwise obligated to redact exempt information from a nonexempt record when the exempt and nonexempt materials are not "inextricably

25

intertwined" and are "otherwise reasonably segregable." (*Deukmejian*, *supra*, 32 Cal.3d at p. 453, fn. 13; see *CBS, Inc. v. Block* (1986) 42 Cal.3d 646, 652–653.)

### 2. *The Balance of Interests in This Case*

Having determined that the CPRA catchall exemption is available in response to a request for the officer-related records specified in section 832.7, we next consider whether the Department has sufficiently demonstrated that the records sought by real parties may be withheld under that exemption. Here, the Department's principal argument for withholding records concerning non-Department officers is the "onerous burden of reviewing, redacting, and disclosing records regarding other agencies' officers, which involves "potentially millions of records." In the Department's view, this burden outweighs the public interest in obtaining those records from the Department rather than the other state and local agencies that employ those officers.

Although the CPRA catchall exemption may be invoked based on the concern that segregating nonexempt from exempt information would be unduly burdensome (*ACLU Foundation*, *supra*, 3 Cal.5th at p. 1043; *State Bd. of Equalization v. Superior Court* (1992) 10 Cal.App.4th 1177, 1188 (*State Bd. Of Equalization*), the withholding of responsive records is not permitted unless the Department demonstrates " 'a clear overbalance on the side of confidentiality.' " (*ACLU Foundation*, at p. 1043.) In balancing the competing public interests in this case, we review the public interest factors de novo but accept the trial court's factual findings that are supported by substantial evidence. (*Ibid*.)

Here, the trial court assumed the CPRA catchall exemption was available but determined the Department's showing did not justify nondisclosure. Our independent review leads us to likewise conclude that, at this juncture, the Department has not demonstrated " 'a clear overbalance on the side of confidentiality.' " (*ACLU Foundation*, *supra*, 3 Cal.5th at p. 1043.)

In making its showing, the Department offered the two-page declaration of Michael Newman, Senior Assistant Attorney General of the Department's Civil Rights Enforcement Section. Newman represented there were six separate matters within that

section that were "likely" to include records potentially responsive to real parties' requests, noting each matter includes "voluminous materials, including reports, transcripts, audio and video files, and photographs." As the first of two examples, Newman cited the Department's independent investigation into a local law enforcement agency that includes over 109,000 records, which he estimated would take a minimum of 3,600 attorney hours to review, "assuming a very optimistic rate of review of 30 records per hour." According to Newman, the second matter includes over 26,000 items that would take approximately 860 attorney hours to review.

In assessing whether an agency has satisfied its burden in invoking the CPRA catchall exemption, courts may accept expert and other predictions based on solid foundations (see *Los Angeles Unified School Dist. v. Superior Court* (2014) 228 Cal.App.4th 222, 244–246) and may consider certain estimates that quantify the burden and cost of production (see *State Bd. of Equalizatiion*, *supra*, 10 Cal.App.4th at p. 1183 & fn. 6). Because Newman's declaration was lacking in meaningful detail, we conclude it fell short of demonstrating that public fiscal and administrative concerns over the expense and inconvenience of responding to real parties' records request clearly outweigh the public interest in disclosure.

In particular, Newman referred to the existence of six matters in the Civil Rights Enforcement Section that "are likely to include records that are potentially responsive." But Newman offered no indication whether the two matters involving 109,000 and 26,000 items are representative examples or outliers. While it seems reasonable to assume that these are the Department's two most voluminous matters, Newman proffered no information regarding the records in the other four matters or the potential burden in reviewing them. Newman additionally alluded to other unidentified sections in the Department that he "understand[s] . . . have also handled matters that would include potentially responsive records," but again, he provided no specifics or estimates as to the number of sections implicated, the number of matters in each of those sections, or the scope of records in each of those matters. There is also a disconnect between the

27

hundreds of thousands of records suggested by Newman and the "potentially millions of records" that the Department's petition claims it will be burdened with reviewing.

The paucity of information regarding the Department's costs of complying with real parties' request is notable in light of certain SB 1421 legislative materials reflecting that the Department had reported to the Legislature estimated "costs of $263,000 in 2018–19, $437,000 in 2019–20, and $422,000 in 2020–21 and ongoing" in order to "implement the new requirements, handle an increase in [CPRA] requests, and potential increased litigation." (Sen. Floor Analysis, *supra*, at p. 8.)[8] These materials do not indicate such costs pertain solely to records for Department employees. In addition, the record does not offer any basis for ascertaining how these Department-specific estimated costs might relate to the Department's review of its officer-related records involving non-Department officers. At the very least, however, we may infer that the Legislature chose to enact SB 1421 despite its awareness that the Department's compliance would entail significant expense.[9]

Additionally, while Newman acknowledged his Civil Rights Enforcement Section has records potentially responsive to the pending requests, the Department made no showing that these same records are held by other state and local agencies. For instance, Newman indicated that the matter with 109,000 records pertains to the Department's independent investigation of a local law enforcement agency. But because Newman

---

[8]     Real parties request we take judicial notice of these particular legislative materials, which the Department does not appear to oppose. We grant the request. (See Evid. Code, § 452, subd. (c).)

[9]     At oral argument, the Department contended the legislative materials focused on S.B. 1421's fiscal impacts on state and/or local agencies only in their capacity as officer employers. Certain materials do appear to reflect that. (E.g., Sen. Rules third reading, *supra*, at p. 8; Sen. Com. on Appropriations, Rep. on Sen. Bill No. 1421 (2017–2018 Reg. Sess.) as amended Apr. 2, 2018.) Those materials, however, cannot be viewed as limiting the Department's disclosure obligations to employee records, given section 832.7's language and other legislative materials establishing the statute's application to all officer-related records maintained by state and local agencies, including those maintained by independent investigatory bodies. (See part C, *ante*.)

28

offered no information establishing or estimating the extent to which the local agency maintains the same records, there appears no basis for determining whether and to what extent the Department's assertions about duplicative efforts are merited. Of course, to the extent the Department is in possession of unique records, no duplicative burden is threatened.

The Department contends it "need not actually gather and review the entire universe of potentially responsive records to provide evidence of the extraordinary burden." That is, because estimates are the only way to provide insights into the burdens posed by a records request, and because Newman's declaration reflected "the basic generalized knowledge that a fact finder possesses regarding human affairs, and the way the world works," the Department posits that his declaration "is precisely the kind of evidence" that courts have typically accepted in assessing burdens under section 6255(a). (See *Cal. First Amend. Coalition v. Superior Court* (1998) 67 Cal.App.4th 159, 174.)

We do not doubt that public agencies and others may have some generalized knowledge regarding the onerous burdens posed by certain types of CPRA requests. But officer-related records were exempt from disclosure before the passage of SB 1421. Consequently, the nature and scope of responsive records in the Department's possession are relatively unknown to litigants and the courts, and the burden of making such records available for inspection must, at this juncture, be established through expert testimony, or at the very least, with a more thorough showing that substantiates the Department's burden.

Nor are we persuaded—on this record—by the Department's claim that it faces an "extraordinary burden" in "having to coordinate with numerous state and local agencies across the state to determine whether there is material that must not be disclosed," and that this burden tips the balance against disclosure. On this score, the Department appears to be concerned with making the redactions necessary to ensure the continued confidentiality of information that either poses a risk to the safety of individual citizens or officers or potentially imperils ongoing investigations about which the Department has no knowledge. Newman's declaration, however, offered no facts that allow for a

meaningful understanding of the scope and type of coordination necessary for the Department and local agencies to meet such concerns. While it could be inferred from Newman's declaration that the Department would have to coordinate with the one local law enforcement agency under investigation, Newman did not say whether the five other matters in the Civil Rights Enforcement Section involve similar independent investigations. Absent a more thorough showing by the Department, we are hard-pressed to assume such tasks are overly burdensome in view of the circumstance that the CPRA allows for extensions of time when "[t]he need for consultation" arises. (See Gov. Code, § 6253, subd. (c)(3)).

The Department's reliance on *Deukmejian*, *supra*, 32 Cal.3d 440, is misplaced. There, the petitioner made a request to the California Department of Justice seeking index cards compiled by a network of law enforcement agencies that listed persons suspected of being involved in organized crime. (*Id.* at p. 444.) The cards included information such as the identities of the family members and known associates of organized crime members, who may or may not have had any connection to organized crime. (*Id.* at p. 453.) The Supreme Court examined the index cards *in camera* and observed that the cards did not indicate "which material [was] confidential, might reveal a confidential source, or identify the subject of the report." (*Ibid.*) The court also commented that "in many instances" the state agency defendants would be required "to inquire from the law enforcement departments supplying the information." (*Ibid.*) In reversing the judgment insofar as it required disclosure of the cards, the Supreme Court "reject[ed] the suggestion that in [weighing the benefits and costs of disclosure under section 6255] the courts should ignore any expense and inconvenience involved in segregating nonexempt from exempt information." (*Id.* at pp. 452–453.) Determining that redacted disclosures were of questionable utility, the court concluded the cost and burden of segregating the exempt and nonexempt information on the cards outweighed the public interest in disclosure. (*Id.* at pp. 453–454.)

The *Deukmejian* decision does not compel the conclusion that nondisclosure is similarly warranted based on the showing made here. As *Deukmejian* observed, the

CPRA catchall exemption "requires the courts to look to 'the facts of the particular case' in balancing the benefits and burdens of disclosure under the [CPRA]." (*Deukmejian*, *supra*, 32 Cal.3d at p. 454, fn. 14.) Thus, while the particular facts in that decision justified nondisclosure, *Deukmejian* cautioned that "in another case, with different facts, the balance might tip in favor of disclosure of nonexempt information." (*Ibid.*) The facts here are different. Unlike the situation in *Deukmejian*, where the index cards in dispute were available for court review, here there is nothing in the record showing that working in coordination with state and local agencies threatens a "limitless obligation" (*id.* at p. 453) such that the public interest predominates in favor of withholding all responsive records pertaining to non-Department officers.

In short, the Department's showing below fails to establish " 'a clear overbalance on the side of confidentiality.' " (*ACLU Foundation*, *supra*, 3 Cal.5th at p. 1043.)

### CONCLUSION AND DISPOSITION

To summarize, we hold that: (1) as a matter of statutory interpretation, section 832.7 generally requires disclosure of all responsive officer-related records in the possession of the Department, regardless whether the records pertain to officers employed by the Department or by another public agency and regardless whether the Department or another public agency created the records; (2) as a matter of statutory interpretation, the CPRA catchall exemption may apply to officer-related records subject to disclosure under section 832.7; and (3) the Department fell short of demonstrating that the public interest served by nondisclosure of the records at issue clearly outweighs the public interest in their disclosure. Although we essentially affirm the trial court's determination on this third point, we emphasize that nothing in our opinion should be understood as barring the trial court from reconsidering the applicability of the CPRA catchall exemption as to any of the requested records upon a proper showing by the Department.

The petition for writ of mandate is denied, the order to show cause is discharged, and the stay previously imposed is lifted. Each party shall bear its own costs on appeal. (Cal. Rules of Court, rule 8.493(a)(1)(B).)

31

_____
Fujisaki, J.


WE CONCUR:


_____
Siggins, P. J.


_____
Petrou, J.


A157998


32

Becerra v. Superior Court

(A157998)

Trial court:          City & County of San Francisco

Trial Judges:         Hon. Richard B. Ulmer


Attorneys:    Xavier Becerra, Attorney General, Thomas S. Patterson, Senior Assistant Attorney General, Stepan A. Haytayan, Supervising Deputy Attorney General, Amie L. Medley, Deputy Attorney General, Jennifer E. Rosenberg, Deputy Attorney General as Defendant and Appellant.

Michael T. Risher; David E. Snyder, Glen A. Smith for First Amendment Coalition for Real Parties in Interest.

Davis Wright Tremaine, Thomas R. Burke, Brendan Charney for KQED, Inc. for Real Parties in Interest.

Reporters Committee for Freedom of the Press, Katie Townsend, Bruce D. Brown, Adam A. Marshall, Daniel J. Jeon; The Associated Press, Karen Kaiser; California News Publishers Association, Jim Ewert; Californians Aware, Terry Francke; The E.W. Scripps Company, David M. Giles; First Look Media Works, David Bralow; Sheppard Mullin Richter & Hampton, James Chadwick; Fox Television Stations, David M. Keneipp; Gannett Co., Barbara W. Wall; Hearst Corporation, Jonathan Donnellan, Ravi V. Sitwala, Diego Ibarguen; Los Angeles Times Communications & The San Diego Union-Tribune, Jeff Glasser; The McClatchy Company, Juan Cornejo; Covington & Burling, Kurt Wimmer; MNG Enterprises, Marshall W. Anstandig; MPA – The Association of Magazine Media, James Cregan;

33

Ballard Spahr, Charles D. Tobin; The National Press Photographers Association, Mickey H. Osterreicher; ProPublica, Richard J. Tofel; Wiley Rein, Kathleen A. Kirby; Reveal from the Center for Investigative Reporting, Victoria Baranetsky; Baker & Hostetler, Bruce W. Sanford, Mark I. Bailen; VICE Media, Lucinda Treat for amicus curiae on behalf of real parties in interest.